GILES H. VAN HORNE, Executor, etc., Appellant, *v.* WILLIAM CAMPBELL et al., Respondents.

A valid executory devise cannot, at common law, be limited after a fee, upon the contingency of the non-execution of an absolute power of disposition vested in the first taker, and such a limitation over is void. An absolute power of disposition annexed to a primary devise in fee is deemed conclusive of the existence in the devisee of an absolute estate. (RUGER, Ch. J., dissenting.)

*It seems* the rule is the same as to bequests of personal property.

As to whether this rule of common law has been changed by the Revised Statutes (1 R. S. 725, §§ 32, 33), *quære.*

F. died in 1791, leaving a will by which he devised certain real estate to his wife for life, remainder over to his son D., "his heirs and assigns forever;" he devised another parcel to his son H. A subsequent clause of the will provided that if either of the testator's "two sons shall die *seized of the estate hereinbefore bequeathed,* or any part thereof, without lawful issue, that then the estate of him so dying seized hereby bequeathed shall descend to the other." After the death of the widow D. took possession of the parcel so devised to him; he died intestate without issue and without having conveyed or otherwise disposed of the land. In an action of ejectment in which plaintiff claimed title under H., *held* (RUGER, Ch. J., dissenting), that the words "shall die seized of" imported an absolute power of disposition in D.; that, therefore, the limitation over was void, and D. took an absolute title.

(Argued February 10, 1885; decided November 24, 1885.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made the first Tuesday of May, 1883, which reversed a judgment in favor of Jane

Van Horne, the original plaintiff herein, entered upon a decision of the court on trial at Special Term.

This was an action of ejectment.

The material facts are stated in the opinion.

*Amasa J. Parker* for appellant.    When after a devise or bequest in language denoting an absolute gift of the whole estate in fee there is, in a subsequent part of the same will, a limitation over in the event of the first devisee dying under age and without issue, the gifts are not repugnant to each other, but the latter is a valid executory gift. (*Norris* v. *Beyea*, 13 N. Y. 273 ; *Trustees* v. *Kellogg*, 16 id. 87 ; *Tryon* v. *Blake*, 22 id. 561 ; *Downing* v. *Marshall*, 23 id. 370 ; *Everett* v. *Everett*, 29 id. 83 ; *Oxley* v. *Lane*, 35 id. 348; *Terry* v. *Wiggins*, 47 id. 518; *Taggert* v. *Murray*, 53 id. 236 ; 64 id. 281; 70 id. 85 ; 91 id. 468; *Wager* v. *Wager*, 96 id. 174; *Attorney-General* v. *Hall*, Fitzg. 314; *Bradley* v. *Paxeto*, 3 Vesey, 344; *Floyd* v. *Fisher*, 38 Barb. 409 ; *Doe* v. *Elmer*, 1 Man., Grang. & Scott, 447 ; *Covenhoven* v. *Shuler*, 2 Paige, 122; *Sweet* v. *Chase*, 2 Comst. 73; *Van Nostrand* v. *Moore*, 52 N. Y. 12 ; *Hoppock* v. *Tucker*, 59 id. 202 ; *Howell* v. *Mills*, 7 Lans. 193 ; 2 Sandf. Ch. 533; 1 R. S. 773, § 2.)    The devise over is not limited on an indefinite failure of issue, and is not for that reason to be held void. (*Patterson* v. *Ellis*, 11 Wend. 292 ; *Executors* v. *Strong*, 10 Johns. 16; *Fosdick* v. *Cornell*, 1 id. 440 ; *Jackson* v. *Burhans*, 3 id. 292; *Jackson* v. *Statts*, 11 id. 337 ; *Jackson* v *Eden*, 16 id. 381; *Lion* v. *Eden*, id. 333 ; *Trustees* v. *Kellogg*, 16 N. Y. 83.)    If the General Term thought the executory devise void it should have modified the judgment by reducing the recovery to one undivided third part. (*Norris* v. *Beyea*, 13 N. Y. 289.) A defense of adverse possession is not available.    A possession to be adverse must be hostile in its inception, and proof of adverse possession must be clear and conclusive.    (*Bradt* v. *Ogden*, 1 Johns. 156; *Jackson* v. *Waters*, 12 id. 365 ; *Dwyer* v. *Sheffer*, 55 N. Y. 446.)

*Horace E. Smith* for respondents.    So far as the rights of

the parties depend upon the will in question, executed in 1791, they must be determined by the rules of law in force anterior to the Revised Statutes. (*Ferris* v. *Gibson*, 4 Edw. Ch. 707, 708; *McDonald* v. *Walgrave*, 1 Sandf. Ch. 274.) Douw Fonda took a fee-simple absolute in the fourteen acres, and the limitation over was repugnant to the estate in fee and void. (*Jackson* v. *Bull*, 10 Johns. 19; *Same* v. *Robins*, 16 id. 537; *Same* v. *Delancey*, 13 id. 552; *Campbell* v. *Beaumont*, 91 N. Y. 464; *McDonald* v. *Walgrave*, 1 Sandf. Ch. 274; *Trustees, etc.*, v. *Kellogg*, 16 N. Y. 83; 2 Washb. on Real Prop. 225 [11], 226 [12]; Willard's Real Estate, 157, 167.) The rules existing prior to the Revised Statutes remain intact. (Willard's Real Estate, 157, 167.) An executory devise to be valid must vest within the compass of a life or lives in being and twenty-one years and nine months afterward. (6 Cruise, tit. 32, Devise, chap. 17; *Patterson* v. *Ellis*, 11 Wend. 260, 279.) The defense of title in respondents by adverse possession is clearly and fully established. (Willard's Real Estate, 314; 4 Kent's Com. 372.) The entry and possession by McLaren and his grantees was in good faith, under color of title, and fully satisfies the rule of adverse possession. (*La Frambois* v. *Jackson*, 8 Cow. 589; *Livingston* v. *Peru I. Co.*, 9 Wend. 511; *Humber* v. *Trinity Church*, 24 id. 587; *Sands* v. *Hughes*, 53 N. Y. 287.) To constitute adverse possession under the statute of limitations, it is unnecessary to establish good faith, nor is it necessary that the possession be under a claim of some specific title. (*Crary* v. *Goodman*, 22 N. Y. 170; *Sands* v. *Hughes*, 53 id. 287; *Munro* v. *Merchant*, 28 id. 19; *Humber* v. *Trinity Church*, 24 Wend. 604.) The adverse possession having commenced in the life-time of Douw Fonda, the ancestor, under whom Jane Van Horne, original plaintiff, claimed, it continued to run, against her, notwithstanding her coverture when the right accrued to her, assuming that it did accrue to her as claimed by appellant. (*Fleming* v. *Griswold*, 3 Hill, 85; *Jackson* v. *Robins*, 15 Johns. 169; *Beckert* v. *Van Valkenburgh*, 29 Barb. 319.) Abraham A. Van Horne was nothing more than a tenant at will of Douw Fonda. (4 Kent's Com. 114; *Jack-*

*son* v. *Rogers,* 1 Johns. Cas. 33; *Jackson* v. *Ellis,* 13 Johns. 118; *Collins* v. *Baker,* 2 Barb. 206; Willard's Real Estate, 456.)

ANDREWS, J.   The original plaintiff, Jane Van Horne, claimed title to the premises in controversy, under Henry V. Fonda, one of the sons of Jellis Fonda, who died seized of the premises in 1791, leaving a widow and two sons and three daughters surviving him.   The title of Henry V. Fonda depended upon the validity of a devise over in the will of Jellis Fonda.   Jellis Fonda, in his will, devised a parcel of land containing about fourteen acres, including the lot in question, to his wife, Jannettie, for life, remainder to his son Douw, his heirs and assigns, forever.   He devised another parcel, under a similar limitation, to his son Henry V.   In a subsequent clause of the will it was provided that, "if either of my two sons shall die *seized of the estate hereinbefore bequeathed, or any part thereof,* without lawful issue, that then the estate of him so dying seized, hereby bequeathed, shall descend to the other of my sons, in which case the survivor shall pay to my said three daughters, each, the sum of one hundred dollars." Jannettie, the widow of the testator, died soon after her husband and prior to the year 1800.   Douw Fonda, after the death of the testator, entered into possession of the fourteen acres devised to him, and died intestate in 1837, without issue, and without having conveyed or otherwise disposed of the land. The contingencies thereby happened upon which, by the terms of the will, the limitation over to his brother Henry V. was to take effect.   The question is, whether this ulterior limitation was valid and vested the fee of the fourteen acres devised in the first instance to Douw Fonda, in his brother Henry, upon the happening of the contingencies specified.   If the limitation was valid, the plaintiff is entitled to recover; if invalid, he has no title, and cannot maintain the action.

Before proceeding to examine the authorities bearing upon the question, it is important to observe the terms of the devise, and the character of the contingencies upon which the limita-

tion over is made to depend. The devise to the testator's son Douw in the first instance was of a remainder in fee, dependent upon the life estate of the mother. The devise was to him and his heirs and assigns forever, — words apt and sufficient to carry an absolute fee. The devise over was upon a double contingency : the death of Douw without issue and without having disposed of the property in his life-time. The latter contingency is not stated in express words. But the power of the primary devisee to dispose of the land by a conveyance taking effect in his life-time, and thereby defeat the ulterior limitation, is implied from the words limiting the gift over to the land or such part thereof as the primary devisee "shall die seized of." That these and similar words import an absolute power of disposition in the first-taker has been frequently adjudged, and some of the cases on this point will hereafter be referred to. The devise may therefore be described in general terms as a devise to the testator's son Douw in words importing an absolute fee, with superadded words conferring an absolute beneficial power of disposition of the whole subject of the devise by conveyance executed in his life-time, and a limitation over in the event of his dying without issue and without having exercised the power of alienation. If the devise in question was a simple devise to the testator's son Douw, in words importing a fee, and a devise over to his brother Henry in the event of the death of Douw without issue at his death, it would have constituted a valid executory devise, according to the doctrine finally settled by the Court of King's Bench in *Pells* v. *Brown* (Cro. Jac. 590), decided in 1619, and which has been uniformly followed in subsequent cases. In that case, as the will was construed, lands were devised to A. and his heirs, and if he died without issue living at his death, then to B. The devise to A. was in words importing a fee-simple, and according to the rule of the common law prevailing in respect to conveyances *inter vivos,* no further limitation was permitted. The common law did not allow a remainder or other legal estate to be limited after a fee. The rule was founded upon the postulate that a conveyance of a

fee was a conveyance of the whole estate, and that nothing was
left upon which the limitation over could operate.   Upon the
assumption that a fee given in the first instance carried the
entire and absolute interest in the land to the grantee, the com-
mon-law rule that there could be no further limitation was
logical and consistent, because where the whole is given there
can be nothing beyond that left to give.   But under the
statute of uses, and indeed before they were legalized by
that statute, a species of limitations known as shifting or
springing uses had been recognized, which permitted ulterior
estates to be created, to arise upon the defeasance of prior
estates in the same property, contrary to the strict rules
of the common law.   The courts, after the passage of the
statute of wills (32 Hen. VIII), following the analogies fur-
nished in conveyances to uses, and in support of the inten-
tion of the testator, gradually came to recognize the validity of
limitations not permitted in conveyances at common law.   In
this desire to sustain the intention of a testator originated the
species of property limitations known as executory devises.
There are traces of the doctrine that a fee limited after a fee
may be good by way of executory devise, prior to the case of
*Pells* v. *Brown.*   But that case completely established the
validity and indestructibility of that species of limitations, and
it has ever since, as stated by Lord KENYON in *Porter* v. *Brad-
ley* (3 Term Rep. 145), been regarded as the "foundation
and, as it were, *magna charta* of this branch of the law."   Since
that time, executory devises limiting a fee after a fee, upon
some contingency operating to defeat the estate of the first
taker, as upon his death without issue or other specified event,
have become common forms of assurance.   The common-law
doctrine of repugnancy between the two estates, which, as has
been said, was perfectly rational upon the assumption upon
which it proceeded, has given way to the more just and reason-
able view, which regards the prior gift, although made in words
which, standing alone, import an absolute estate, as restrained
by the subsequent limitation, and as conferring only a qualified
estate.   This prior estate, although properly denominated a fee,

because it may last forever, is nevertheless a base or determin-able fee, because it is liable to be defeated by the happening of the contingency upon which it is limited. In other words, in such a case, as the limitation is construed, an absolute fee is not given to the first taker, but only a qualified and determinable one. But a reference to the devise contained in the will of Jellis Fonda discloses an element not contained in the will under consideration in *Pells* v. *Brown*. It is not a simple devise as in that case, to A. and his heirs, with a devise over on the death of A. without issue, but there is interposed between the primary and secondary limitation a disposing power whereby the first taker was entitled to dispose of the whole fee for his own benefit, and thereby cut off and defeat the ulterior limitation ; because it is evident that the testator, in conferring this power on his son Douw, was not providing for a disposition by him, subject to the limitation over to Henry, but for a disposition which would defeat and destroy it. It is hardly necessary to call attention to the radical difference in the situation of the ulterior devisee, effected by this power of disposition in the first taker, from the situation of the executory devisee in *Pells* v. *Brown* and similar cases. In cases of the latter class the right of the ulterior devisee cannot be cut off or divested by any act of the primary devisee. It is true that the secondary limitation depends upon a contingency which may never happen, and so no estate may ever vest thereunder ; but whether it shall, or shall not, is not subject to the will of the first taker, but depends upon the event of life, or death, or other contingency, not within his volition or control. On the other hand, where, as in the will in question, in addition to words importing an absolute fee, in the first taker, there is superadded a beneficial disposing power, authorizing him to convey an absolute fee, and thereby divest all rights in the secondary devisee and cut off the limitation over, the interest of the ulterior devisee, assuming that the limitation is valid, is reduced to scarcely more than a mere possibility. The power given to the first taker is conjoined with an interest in him to exercise the power and thereby defeat the subsequent estate.

In any view the estate of the first taker is scarcely less than complete ownership, and the right of the ulterior devisee is, as has been said, scarcely more than a very remote possibility.

The precise question presented, therefore, for our determination is, whether an executory devise can be made to depend on the non-execution by the first taker of an absolute beneficial disposing power, vested in him by the will creating the limitation, or, in other words, whether there can be a valid executory devise where the executory limitation is conjoined with an absolute power in the primary devisee to defeat and cut off the future estate or interest by alienation of the entire fee in his life-time, and whether it makes any difference as to the rights of the ulterior devisee, whether the power has or has not been exercised. This question we may reasonably expect to find answered by the authorities, and, as we understand them, it is answered by an unbroken line of authorities in this State, and the almost uniform course of decision elsewhere, against the validity of such a limitation. If the limitation over was void, the absolute fee to the fourteen acres vested, on the death of the testator, in his son Douw. Where a limitation over after a devise of a fee-simple is void for remoteness or other reason, the fee-simple stands as an absolute fee, as though no limitation over had been attempted. (Lewis on Perp. 657; 2 Washb. on Real Prop. 360, and cases cited.) Another remark may properly be made before proceeding to examine the authorities. Executory devises are what the courts have made them, and whether in a given case there is or is not a good executory devise depends upon whether the devise conforms to the rules which the courts have adopted regulating that species of limitation. This is very clearly brought out in a striking passage from Mr. Hargrave (Harg. Jurid., Arg. 31): " Executory devises," says that eminent authority, " appear to be not a genuine branch of our law, but an indulged superinduction to it ; not a regular production of our general system, but an excrescence ; not a strictly regular species of entail, but a permitted regular mode of settlement ; not a legitimate offspring of our common law, but a privilege gradually insinuated into

our jurisprudence." The general rule sustains a limitation over after the devise of a fee, on a contingency defeating the prior estate ; but if it shall be found that the law of executory devises, as established by the courts, does not permit such a limitation over on a particular contingency, as, for example, where an absolute power of dispositon is vested in the first taker, then the limitation over in that case is not a good executory devise, because it does not come within the rules regulating that species of limitation. The limitation over in the case supposed would be repugnant to the prior fee and the superadded power, not because there could not in the nature of things be a complete and perfect execution of the intention of the testator, for manifestly there is no necessary repugnancy, in fact, between a gift to A. with power of disposition, and a gift over to B. in case the power is not exercised. But such a gift over, upon the assumption made, is repugnant in law to the prior estate and power, because the law has declared that a valid limitation over cannot be made to depend upon such a contingency. The law in the case supposed defeats the intention of the testator. But this occurs in all cases where a testator undertakes to do what the law does not permit. The rule of perpetuities and our statute of uses and trusts furnish familiar examples. Lord LANGDALE, referring to this principle in *Byng* v. *Lord Strafford* (5 Bea. 558), said : " The words are not rejected against the rule that every word in a will shall, if possible, have a meaning, but because the testator has attempted to do what the law will not permit, or has made dispositions of property which are inconsistent with each other."

The earliest case in the courts of this State, involving the question now presented, is *Jackson* v. *Bull* (10 Johns. 19), decided in 1813. The action was ejectment. The plaintiff claimed title under the will of one Bull, whereby the testator devised the demanded premises to his son Moses, his heirs and assigns forever, and another parcel, by a similar devise, to his son Young, and then declared as follows: " In case my son Moses should die without lawful issue, the said property he died possessed of I will to my son Young," etc. After the death of

the testator, Moses, the son, entered into possession of the property devised to him, and died in possession without issue, and by his last will devised the property to his wife, sister and half-brother, under whom the plaintiff claimed title. The question was, whether the testator's son Moses took under the devise an absolute fee, thereby rendering the limitation over void. The cause was tried before KENT, Chief Justice, and a verdict was taken subject to the opinion of the court. The court in *banc*, in a *per curiam* opinion in which all the judges concurred, held that the limitation over was void as being repugnant to the absolute ownership and power of disposition given to Moses by the will, and it was declared to be a settled principle that a "valid executory devise of real or personal property cannot be defeated at the will and pleasure of the first taker;" and also that the question did not turn upon the fact whether the devisee had exercised the power of alienation. The power of disposition in the testator's son Moses was implied from the words "died possessed of." The fact that Moses had himself devised the property was not referred to by the court, and was clearly immaterial. The language from which the power of disposition was implied manifestly confined the disposition to a conveyance by Moses operating in his life-time. He would die possessed of the land in absence of such a conveyance, notwithstanding he had devised it, and if the limitation over was valid, it would not be defeated by a testamentary disposition, because such a disposition was not within the power. The very close correspondence between the circumstances of that case and the one now before us cannot fail to attract attention. In both the primary devise was in words appropriate to carry a fee; the limitation over in both cases was on a double contingency of precisely the same character, that is, on the contingency of death without issue and without having disposed of the property, and in neither had the power of disposition been exercised. The case of *Jackson* v. *Bull* is a direct and explicit authority against the validity of the limitation over in the case before us. The next case involving the question arose upon the will of William Alexander, known as Lord Sterling, who

died in 1783. By his will, dated in 1771, he devised, in words sufficient to carry the absolute property, all his estate, real and personal, to his wife Sarah; but in case of her death without disposing of such estate by will or otherwise, then all such estate, or all parts thereof as should remain unsold or undevised at her death, he devised to his daughter, Catherine Duer. This, it will be observed, was a perfectly valid executory devise to Catherine unless the limitation over was void by reason of the disposing power vested in the mother. Several cases are reported in Johnson, arising under this will. But the case of *Jackson* v. *Robins* (15 Johns. 169; *S. C.*, 16 id. 537) is the only one to which reference need be made. That was ejectment brought to recover lands in Ulster county, the plaintiff claiming title under the limitation over to Catherine, the daughter of Lord Sterling. The defendant relied upon two principal grounds of defense: first, that the limitation over in the will of Lord Sterling was void, by reason of the power of disposition given to the mother; and second, a title by adverse possession. The case came before the Supreme Court on special verdict, and judgment was rendered for the defendant. It was carried to the Court of Errors, and was there argued by some of the most eminent counsel in the State. The opinion was delivered by Chancellor KENT, adversely to the plaintiff, sustaining the defense on both grounds. The counsel for the plaintiff, at great length and with great ability, assailed the correctness of the decision in *Jackson* v. *Bull.* The chancellor in his opinion re-examined the principles of that decision, and after an elaborate discussion and examination of the authorities, re-affirmed the doctrine of that case, and declared that " there is not a case to be found in which a valid executory devise was held to subsist under an absolute power of alienation in the first taker." The court concurred unanimously in the opinion of the chancellor, and the judgment was affirmed. Passing by the case of *Patterson* v. *Ellis* (11 Wend. 260) as not material to the discussion, except that Chief Justice SAVAGE in his opinion cites and expressly approves the doctrine of *Jackson* v. *Bull,* we come next in order to the case

of *Helmer* v. *Shoemaker* (22 Wend. 137). The plaintiff claimed certain land under an executory devise, the defendant under a deed from the first taker. By the will the land was devised to the testator's wife, without words of limitation, and it was then declared that " all the avails of the property that might remain " at her decease should go over. It was held, COWEN, J., writing the opinion, that the widow took an absolute fee by reason of the power of disposition. The title of the defendant might, perhaps, have been sustained on the deed from the widow, as an execution of the power, but no reference was made to this point, and the court disposed of the case on the doctrine of *Jackson* v. *Bull*. In *McDonald* v. *Walgrove* (1 Sandf. Ch. 274), a testator devised all his real estate to his wife, to be at her entire disposal ; *but if any part remained unsold* at her death, he devised the same to his children and grandchildren. The will took effect before the Revised Statutes, and the widow died without having sold the property. It was held by the vice-chancellor that the wife took an absolute fee and that the subsequent limitation was repugnant and void. The learned judge touches very nearly the marrow of the question when he says : " Here the whole estate was made defeasible by the disposition of the property of the testator, *and by consequence it cannot be deemed an executory devise.*" *Norris* v. *Beyea* (13 N. Y. 273) was a case involving the construction of a will of personal estate, taking effect after the Revised Statutes. The testator, after bequeathing a personal fund in language denoting an absolute gift, provided that it should go over in the event of the first legatee dying under age and without issue. It was held in accordance with the settled law that the gift over was a valid executory bequest. Judge DENIO, delivering the opinion of the court, distinguished the case from those in which the limitation over was preceded by an absolute power of disposition in the first taker, and said : " In such cases a further limitation was clearly hostile to the nature and intention of the gift." No reference was made by the learned judge to the provisions of the Revised Statutes, but the case was decided on common-law principles. The case of

*Trustees, etc.,* v. *Kellogg* (16 N. Y. 83) involved the validity of a legacy under a will which took effect in 1824. The testator devised his real and personal estate to his daughter Chloe, her heirs and assigns, forever, and in the event of her dying without issue, he gave to the plaintiff a legacy of $10,000. The testator by his will appointed a guardian for the daughter during her minority, and directed him to apply such part of the estate as he should deem necessary for her maintenance, education and support. It was claimed on behalf of the executors that the legacy was void for repugnancy to the prior gift to the daughter. The objection was overruled on the ground that the power of disposition was limited to a special purpose, and during a limited period, viz., for the maintenance, education and support of the daughter during her minority, and also, that from the amount of the estate, the provision for the support of the daughter could not have been intended to interfere with the legacy to the plaintiff. Judge DENIO in his opinion recognizes the rule that an absolute power of disposition would have rendered the legacy void. He says: " If it appeared that the testator intended to confer upon the first devisee an absolute power of disposition, and in his will he afterward made a gift over, the two dispositions cannot stand together. The absolute power of disposition shows that he intended to give an unqualified title to the first devisee, and it is in the nature of such a title that the property, if not alienated by the owner, shall descend to the heirs if it be real estate, or go to the next of kin if it be personal. The gift over is repugnant to this quality of absolute ownership, and it is consequently void." It will be noticed that Judge DENIO regarded the rule stated as alike applicable to devises of real and personal property. *Tyson* v. *Blake* (22 N. Y. 563) was the case of an executory bequest, with a limitation over on the death of the primary legatee without issue, and is only important in the discussion, as containing an express recognition of the doctrine of the prior cases, that a limitation over is incompatible with an absolute disposing power in the first taker. *Terry* v. *Wiggins* (47 N. Y. 512) was an action of ejectment, the title depending upon a devise

in a will which took effect in 1862, of certain land to the testator's wife, for "her own *personal* and independent use and maintenance," with power to sell the same, and a devise over after her death, of any residue, etc. The court construed the will as giving the wife a life estate only, with a limited power of disposition, and sustained the devise over on this ground. Allen, J., said: "The power of disposition is not absolute, so as to bring it within the rule making all devises with absolute power of disposition in the devisee, gifts in fee;" and he further said that if the devise to the wife had been a fee, the claim that the devise over was repugnant and void would have been well founded. The learned judge also referred to certain provisions of the Revised Statutes, and remarked that it was not material to decide whether the limitation over was a good executory devise at common law. *Smith* v. *Van Ostrand* (64 N. Y. 278) involved the construction of a will which, as construed, gave to the testator's widow a sum of money during life or widowhood, with power to use so much of the principal as might be necessary for her support, with remainder to her children. The court sustained the validity of the gift in remainder, on the ground that the power of disposition was not absolute, but limited and conditional. Judge Rapallo said: "The cases sustain the proposition that where an absolute power of disposal is given to the first legatee, a remainder over is void for repugnancy," and adds: "But they also recognize the principle that if the *jus disponendi* is conditional, the remainder is not repugnant. The power of disposition in the present case is only for a special purpose — the support of the widow." *Campbell* v. *Beaumont* (91 N. Y. 464) was an action for the construction of a will of real and personal estate, which took effect in 1876. The principal question was, whether there was a valid limitation over of the real and personal estate, which in the first instance was given to the wife of the testator. The alleged limitation over was of the property, or such portion "as may remain," etc., after the decease of the wife. The court held that upon the construction of the whole will, the fee in the real estate and the absolute interest in the personal property

was given to the wife, and further, that if the intention of the testator was to limit the estate over, the limitation was void, as repugnant to the power of disposition. DANFORTH, J., said: " The gift appears absolute and entire in its terms; no child of the testator was to be provided for, and it better accords with decisions in this State to hold that if a limitation over was attempted, it is repugnant and void," citing *Jackson* v. *Bull* *(supra)*.

We have referred to all the cases which we have found in this State having a direct bearing upon the point under discussion. They unite, in declaring as an undoubted principle of the common law that a valid executory devise cannot co-exist with a devise of a primary fee, accompanied with an absolute disposing power in the first taker, and that an executory limitation by will, either of real or personal property, after a gift of an absolute estate, is void. An absolute power of disposition annexed to a primary devise in fee is deemed conclusive of the existence in the primary devisee of an absolute estate. Such of the cases as sustain a limitation over after a life estate, accompanied with a limited power of disposition in the life tenant, proceed upon a distinction perfectly well settled, and fall within that common form of limitation, viz., a limitation for life, with power of appointment in the life tenant, and remainder over on default of its exercise. The estate created by the exercise of the power does not take effect out of the interest of the life tenant, but out of the estate of the grantor of the power not embraced in the life interest. (See *Bradly* v. *Westcott*, 13 Ves. 445.)

The decisions in other States upon this question are equally uniform. *Ide* v. *Ide* (5 Mass. 500), decided in 1809 by Chief Justice PARSONS, is perhaps the earliest case in the country upon the subject. The action was ejectment. In that case the testator devised real estate to his son P., his heirs and assigns, forever, and also bequeathed to him personal estate in words denoting an absolute interest, and in a subsequent clause declared, "and further, it is my will, that if my son P.

shall die and leave no lawful issue, *what estate he shall leave*, to be divided between my son J. and my grandson N.," etc. P. conveyed the land in his life-time and died leaving no issue. The court held that the limitation over was void for repugnancy to the disposing power, and on that ground decided the case for the plaintiff, making no reference to the fact that P. had exercised the power by a conveyance. The power of disposition was held to be implied from the words, " what estate he shall leave." *Melson* v. *Doe* (4 Leigh, 408), decided by the Supreme Court of Virginia in 1833, was a case where a testator devised land to his son W. and his heirs, and if he should die without a son, and *not sell the land*, then to the testator's son G. It was held, as stated in the head-note, that the devise gave W. absolute power to sell a fee-simple, and therefore, whether he sold or not, he took a fee-simple and the devise over was void. The same principle was declared in a prior case in the same State (*Riddick* v. *Cohoon*, 4 Rand. 547), where the power of disposition was held to be implied from the words, " so much of the estate as may remain undisposed of." *Cook* v. *Walker* (15 Ga. 459) involved the construction of a marriage settlement of real and personal property which provided for the devolution of the property if the wife " should die intestate, without making any disposition," etc. LUMPKIN, J., in delivering the opinion of the court, said : " We hold it to be an incontrovertible rule that whenever an estate is given in Georgia, either by deed or will, to a person generally or indefinitely, with an unlimited power of disposition annexed, it invariably vests an absolute fee in the first taker, and that neither a' remainder nor an executory devise can be limited on such an estate." The cases of *Flinn* v. *Davis* (18 Ala. 132) and *McRea's Administrators* v. *Means* (24 id. 350) declare the same rule. In *Pickering* v. *Langdon* (22 Me. 413) it was held that a gift over of real and personal estate, of " what remains " on the death of the first taker, was void ; and in *Ramsdell* v. *Ramsdell* (21 Me. 288) it was declared that the doctrine of *Jackson* v. *Bull* (*supra*) was the settled law. The doctrine that an absolute power of disposition in the first taker was

fatal to a limitation over was also declared by the court of North Carolina (1 Jones, 463), and also by the courts of Tennessee in two cases ( *Williams* v. *Jones*, 2 Swan, 620 ; and *Davis* v. *Richardson*, 10 Yerg. 290). After a somewhat diligent examination I have been unable to find any decision in any court in this country, adverse to the doctrine declared in *Jackson* v. *Bull* (*supra*), and I think it may safely be affirmed that the doctrine of that case is the settled law of the American courts. I cannot better conclude this review of the American cases than by quoting the words of Chancellor KENT in his Commentaries, written long after the decisions in Johnson (*supra*), and after the close of his judicial life. Speaking of executory devises (4 Kent's Com. 270), after stating that a valid executory devise must be indestructible by the first devisee or taker, he adds : " If, therefore, there be an absolute power of disposition given by the will to the first taker, as if an estate be devised to A. in fee, and if he dies possessed of the property without lawful issue, the remainder over, or remainder over of the property which he, dying without heirs, should leave, or without selling or devising the same ; in all such cases the remainder over is void as a remainder, because of the preceding fee ; and it is void by way of executory devise, because the limitation is inconsistent with the absolute estate or power of disposition expressly given or necessarily implied by the will." (See, also, to the same effect, 2 Wash. Real Prop. 669.)

The doctrine of *Jackson* v. *Bull* is assailed as contrary to the settled rule of the English courts, and as based upon a misconception of the case ` of *Attorney-General* v. *Hall* (Fitzg. 314), cited as authority for the decision, and upon a mistake of the court in applying to executory devises a rule applicable only to limitations of personal property. If the claim made was well founded, it would furnish no reason for departing from a rule of property settled by repeated decisions in our courts, and which has become the foundation of legal titles. Many of the established rules of property limitation are technical, and in many instances were founded upon mistaken analogies or upon reasons which no longer have any

significance. But to depart from them in cases where rights have become vested and titles have been taken in reliance upon them, would produce great inconvenience, and in many cases work gross injustice. But after an examination of the English cases, I have reached the conclusion that the doctrine of *Jackson* v. *Bull* accords with the great weight of authority in England, and that the alleged distinction between executory testamentary limitations of real and personal estate has no foundation in English law, or at least that such a distinction has not been recognized from a time anterior to the case in Fitzgibbon which was decided in 1731. In that case a testator owning real and personal estate gave it by will to his son F. H., and to the heirs of his body, and if he should die leaving no heirs, then he gave so much of the real and personal estate as the son *should be possessed of at his death*, to charitable purposes. The question was, whether the limitation over of the personal property was good. The court, as the case states, "unanimously held that the absolute ownership had been given to F. H., for it is to him and the heirs of his body, and the company are to have no more than he shall have left unspent, and therefore he had power to dispose of the whole," and the limitation over was held to be void. The case was referred to and approved by Lord HARDWICK in *Flanders* v. *Clark* (1 Ves. Sr. 9), who said : "It was insisted in *Attorney-General* v. *Hall* (Fitzg.) that he, F. H., had only a usufructuary interest, and so to go over, but it was determined by Lord KING that he had the absolute property, and therefore the devise was void; for he had the power to spend the whole, which was an absolute gift." It will be noticed that Lord HARDWICK understood the case as holding that the gift was absolute, because of the power of disposition. It accords with logic as well as law, that where a gift of real or personal property is in law absolute, there can be no valid ulterior limitation engrafted upon it. Executory devises of a fee, limited after a fee, were sustained, as I have said, upon the ground that, construing the whole limitation together, the first fee was a qualified and not an absolute interest.

In the early period of the law, as is well known, future estates in personal property were not permitted. It was originally held that a gift of personalty for life was an absolute gift, so as to invalidate any further limitations (7 Roll. Abr. 610); then a distinction was raised between the gift of the thing itself, and a bequest for the use only for life (Plowd. 521; Cro. Jac. 346), but this distinction was finally laid in *Hyde* v. *Parrat* (1 P. Wms. 2), and for more than a century and a half, executory bequests of personal property have been permitted by the law of England, under the same rules of limitation as apply to executory devises of land. It will avoid confusion to refer to one distinction between limitations of real and personal property, founded upon a peculiar reason, and which is an exception to the general rule of uniformity of construction. It was settled at a very early period in the law that words of limitation that give an estate tail in land give an absolute interest in personal property. This distinction was indulged in order to prevent the creation of perpetuities in limitations of personal property. The statute *de donis*, which was the foundation of estates tail, applied only to land. In their origin these estates were perpetuities, because they could not be alienated out of line of the entail. The courts, to defeat the design of the great lords in enacting the statute, invented the processes of fines and common recoveries as a means of unfettering these entails. But limitations of personal property in the nature of estates tail in land could not be barred by fine or common recovery, and unless cut off and held to be invalid, would lead to perpetuities in that species of property. And to prevent this, the limitation to issue was held to be void, and the first taker was held to take an absolute interest, free from the limitation over. (*Bradhurst* v. *Bradhurst*, 1 Paige, 331–345; Roper on Leg., p. 1522.) Executory devises were also exempt from the operation of fines and common recoveries, because the fiction of compensation to the issue in tail, upon which those proceedings were founded, was inapplicable to that species of limitation; but they were prevented from becoming perpetuities by the rule established by the courts that, in order

to be valid, they must be limited on a contingency which must happen within the period prescribed for the vesting of future estates. The doctrine of executory devises in its origin had reference to real property; but from a very early period in the law, and prior to the case in Fitzgibbon (*supra*), executory bequests of a future interest in personal property, to take effect on a contingency defeating a prior bequest, made in words denoting a gift of an absolute estate in the first taker, were recognized as valid, and I am unable to find any trace in recent times of any distinction between the two species of limitation, or any case which holds that a limitation bad as to one species of property is good as to the other, or conversely. The very early case reported in 2 Freeman's Ch. 137, decided in 1672, expressly affirmed the validity of an executory bequest of personal property after words of absolute gift, to take effect on a contingency defeating the prior estate. The case was a bequest of £500 to the testator's daughter, and if she died under thirty years of age, unmarried, then over. She received the money and died before the time; it was held that her executors were chargeable as possessed in trust for the legatees over. This indeed, says Fearne (p. 404), was not the case of a devise to one for life or a particular period, and afterward to another, but a conditional new disposition of the property upon a particular contingency. There are many other English cases sustaining an executory bequest of the same character. (*Atkinson* v. *Hutchinson*, 3 P. Wms. 258; *Wilkinson* v. *South*, 7 T. R. 555; *Stone* v. *Maule*, 2 Sim. 490.) The doctrine that personalty may be bequeathed under the same limitations as realty, and that the validity of executory bequests depends upon the same rules as govern executory devises, is affirmed by the text-writers, and, so far as I know, without dissent. (Lewis on Perp. 99; Smith on Exec. Int. 312; Roper on Leg. 1546; Fearne on Rem., Mr. Butler's note E, p. 401.) Upon the authorities the claim that the case in Fitzgibbon proceeded upon any distinction known to the law between an absolute bequest of personal property with a superadded power of disposition in the first taker, and an executory

devise of the same character, cannot be supported. The rule that a gift over of personal property by will, after a prior general gift accompanied with an absolute disposing power in the first taker, is void for repugnancy, was held in *Bull* v. *Kingston* (1 Mer. 314) and in *Ross* v. *Ross* (1 Jac. & W. 154). They go upon the general principle and not upon any distinction between real and personal property. The case last cited was of a legacy to A., to be paid at twenty-five, with a limitation over if A. should not receive or dispose of it by will in his lifetime, and the limitation over was held to be void for repugnancy. Sir Thomas Plumer, M. R., said : " I do not recollect any instance of a will where an absolute property is first given, with a condition that if a party does not make use of it, it goes over," and referring to the case before him, he said : " It is quite a novel attempt to separate the devolution of property from the property itself."

There is a single case in England which sustains the contention of the plaintiff. In *Doe* v. *Glover* (1 M., G. & S. 448), decided in 1845, a testator devised lands to his son, his heirs and assigns, forever, but in case his son " should depart this life without leaving any issue of his body then living," and shall not have " disposed of or parted with his interest in said lands," then over. The son died without issue and without having disposed of the land in his life-time, but left a will devising the property. The question considered in the opinion was, whether the will was a good disposition of the disposing power. The court decided that it was not, and having reached this conclusion, held that the limitation over took effect, without adverting to the question whether there was any repugnancy between the limitation over and the disposing power. In *Beachcroft* v. *Broome* (4 T. Rep. 441) is a dictum by Lord KENYON, also supporting the plaintiff's position. The case of *Doe* v. *Glover* is the only case in England which we have been able to find involving the question, which sustains a limitation over after a devise in fee accompanied with an absolute power of disposition in the primary devisee. But as early as 1746, in the case of *Gulliver* v. *Vaux*, a report of

which was found among Sergeant Hill's manuscripts, and which is printed in an appendix to the case of *Holmes* v. *Godson* (8 De G., Mac. & G. 152), it was held that a limitation over of real estate after a fee, on the contingency of the death of the first taker without issue and " without appointing the disposition of the estate," was not a good executory devise by reason of its repugnancy to the disposing power. The case was decided by WILLIS, Ch. J., and his associates, and is declared by Lord Justice TURNER, in *Holmes* v. *Godson*, to be of the highest authority. The case of *Holmes* v. *Godson*, which was decided on appeal in chancery in 1856, is a precise authority in support of the doctrine of *Jackson* v. *Bull* (*supra*). That was the case of a devise of real and personal estate in trust for the testator's son, with a proviso that if he should die under twenty-one, or without having made a will, then over. The plaintiffs claimed under a conveyance of the real estate from the son, and the defendants under the limitation over, the son having died after he had attained the age of twenty-one without making a will. The court held that the limitation over was void for repugnancy, Lord Justice TURNER saying: " This is in terms a disposition of real estate in favor of other devisees, in the event of the primary devisee dying intestate, and I think such a disposition is repugnant and void." After referring to decisions relating to personal property, he said: " It was objected to these cases that they all referred to personal estate. But upon this question I confess myself unable to see the distinction between cases relating to personal property and cases relating to real estate," and then, after referring to *Gulliver* v. *Vaux* and other cases, he continued: " All these are cases of real estate, and they seem clearly to prove that upon this point there is no distinction between the cases relating to real and personal estate. In truth, the decisions in both cases turn, as I apprehended, on this: The law has said that if a man dies intestate, the real estate shall go to the heir, and the personal estate to the next of kin, and any disposition which tends to contravene that disposition which the law would make is against the policy of the law, and therefore void."

And then, referring to *Doe* v. *Glover* (*supra*), and to the fact that the point of repugnancy was not brought to the attention of the court, he said: "If the case of *Doe* v. *Glover* is to be considered as conflicting with the other authorities, I think that the other authorities, and especially the case of *Gulliver* v. *Vaux*, ought to prevail against it." Lord Justice BRUCE also delivered an opinion to the same effect. The case *In re Stringer, etc.* (L. R., 6 Ch. Div. 1) arose upon a will in which the testator gave to J. his real and personal estate, with full power to sell and dispose thereof, by deed or will, with a gift over in case J. should make no disposition of the property. J. died in the life-time of the testator. It was held at the hearing, by Sir George Jessel, M. R., that the gift over was void for repugnancy. The decision was reversed on appeal on two grounds: *first*, that as the first gift failed by the death of the primary devisee before the death of the testator, the second devise took effect as a primary limitation; and *second*, that on the whole will, the intention was, that the testator should have only a life estate. But the judges expressly recognize and affirm the doctrine that a limitation over, after a fee with an absolute power of disposition in the first taker, would be void. JAMES, L. J., said: "It is settled by authority that if you give a man some property, real or personal, to be his own absolutely, that you cannot by your will dispose of that property which becomes his. You cannot say that if he does not spend it, or if he does not give it away, if he does not will it, that which he happened to have in his possession, or in his drawer, or in his pocket, at the time of his death, shall not go to his heirs at law if it be realty, or to his next of kin if it be personalty." (See, also, *Shaw* v. *Ford*, L. R., 7 Ch. Div. 669.)

The authorities cited, sustain, I think, the main proposition of this opinion, that according to the uniform course of decision in this country and the great weight of authority in England; a valid executory devise cannot at common law be limited after a fee, upon the contingency of the non-execution of an absolute disposing power vested in the first taker, and that such a limitation over is void in its creation. I have not referred to the

provisions of the Revised Statutes.　If these provisions (1 R. S. 725, §§ 32, 33) have changed the common law, a point which we do not now decide, they cannot affect the disposition of this case.　The rights under the will of Jellis Fonda became fixed upon his death in 1791, and must be adjudged according to the rules of the common law.

· I have considered the case upon the assumption that the right of the plaintiff rested solely upon the will of Jellis Fonda, and have made no reference to the claim made on the argument, so far as appears, for the first time, that, admitting that the testator's son Douw took an absolute fee in the fourteen acres under the will, yet upon his death, his brother Henry took an interest in the land as one of his heirs at law, which became vested in his children upon his death.　It is unnecessary to consider this aspect of the case, as the defendant, if the order of the General Term is affirmed, is entitled to judgment absolute upon the plaintiff's stipulation.

I close this too protracted discussion.　It may find some excuse in the desire to vindicate the doctrine of *Jackson* v. *Bull*, and the cases in this State which have followed it, from the claim persistently urged, but, as I think, without foundation, that that doctrine was a departure from the established law.

The order of the General Term should be affirmed, and judgment absolute directed for the defendant.

RUGER, Ch. J. (dissenting.)　In discussing the questions presented by this appeal, it will be convenient to treat it as a case still continuing in the name of Jane Van Horne, the original plaintiff, notwithstanding her death and the substitution of her heirs and executors as plaintiffs.　It was then an action to recover, in ejectment, parcel of fourteen acres of land, situate in the village of Fonda.　The main question in the case is whether a certain clause in the will of Jellis Fonda created, in the event of the death of Douw Fonda, without issue, a valid remainder in, or was a good executory devise of, the fourteen acres to his son Henry V.

Jellis Fonda died in 1791, and devised to his wife, Jannettie,

Fonda, an estate for life in the fourteen acres, together with other lands, and after her decease, devised certain lands to his son " Henry, to hold to him, his heirs and assigns, forever," and as to the fourteen acres, provided as follows: " After her decease I give, devise and bequeath the same to my son Douw, to hold to him, his heirs and assigns, forever." The last disposing clause read as follows : " It is my will that if either of my sons shall die seized of the estate hereinbefore bequeathed or any part thereof, without lawful issue, that then the estate of him so dying seized hereby bequeathed shall descend to the other of my said sons, in which case the survivor shall pay to my said three daughters each the sum of one hundred pounds." All of the parties claim under the same title, but the defendants, being in possession, rely solely upon the invalidity of such title to defeat a recovery.

One of the claims made by the respondents in respect to this clause is, that it is void as offending the provisions of the statute against perpetuities, inasmuch as the phrase " dying without lawful issue" is urged as meaning an indefinite failure of issue, ·whereby the attempted remainder might extend beyond the lawful period.

If it be conceded that the rule, as it existed at common law previous to the revision of the statutes, construed these terms, standing alone, as meaning an indefinite failure of issue, it is nevertheless true that courts, for the purpose of giving effect to a remainder, attached importance to slight circumstances appearing in a will as indicating an intention on the part of the testator to limit the application of such words to issue living at the death of the first taker. (*Fosdick* v. *Cornell*, 1 Johns. 440; *Jackson* v. *Blanshan*, 3 id. 292 ; *Ex'rs of Moffat* v. *Strong*, 10 id. 13 ; *Jackson* v. *Staats*, 11 id. 337 ; *Anderson* v. *Jackson*, 16 id. 382; *Lion* v. *Burtiss*, 20 id. 483 ; *Trustees, etc.*, v. *Kellogg*, 16 N. Y. 86.)

It cannot consistently with the authorities be disputed but that the provisions creating the remainder in favor of the respective sons and charging them personally with the payment of a gross sum to each sister, upon the happening of the con-

tingency referred to, indicate the intention of the testator that
the remainder provided for should vest within the life of one
of his sons, and upon the death of either without living issue.
(*Hughes* v. *Sayer*, 1 P. Wms. 584.)    Such was the view
taken by the General Term, and we think it was correct.
That court, however, reversed the judgment for plaintiff upon
the ground that the last disposing clause was void on account
of its repugnancy to the provisions devising the land to the
sons : holding that an estate in fee simple was vested in
each son, with the power of absolute disposition, and that the
existence of such power defeated the provision disposing of
the land upon the contingency of the death of either son with-
out issue, whether it be regarded as creating a remainder or an
executory devise.    By the construction thus given, the provis-
ions contained in the last clause are wholly obliterated, and all
effect whatever is denied to them.    Since the adoption of the
provisions of the Revised Statutes relating to powers and estates,
it cannot we think be questioned but that devises like the one in
question must, in cases to which they apply, be upheld as
creating a valid contingent remainder.    Those provisions are
contained in sections 32 and 33, article 1, title 2, chapter 1,
part 1, page 2178, 7th edition, entitled " Of Estates," and read
as follows :

" No expectant estate shall be defeated or barred by any
alienation or other act of the owner of the intermediate or pre-
cedent estate, nor by any destruction of such precedent estate
by disseizin, forfeiture, surrender, merger or otherwise."

" § 33.    The last preceding section shall not be construed to
prevent an expectant estate from being defeated in any manner
or by any act or means which the party creating shall in the
creation thereof have provided for or authorized.    Nor shall
an expectant estate thus liable to be defeated be on that ground
adjudged void in its creation."

Sections 81 and 82 of article 3, same title, chapter and part,
relating to powers, confirm the provisions referred to.

Considering the conflict then existing in the reported cases
as to the validity of such devises, it seems difficult to resist the

conviction that these provisions were adopted as declaratory of the existing rule, as well as intended to govern future controversies.

The questions in this case, however, are to be determined upon the law as it stood previous to the revision of the statutes, inasmuch as the rights of the parties were fixed before that time by the death of Jellis Fonda. It cannot be disputed but that there is some authority to sustain the conclusion reached by the General Term, but I have found no case decided in the court of last resort in this State within the last fifty years, where the rule claimed, has been followed. The question has been frequently up during that time, and the validity of such a provision has been uniformly sustained, although the authorities supporting a contrary doctrine have not been expressly overruled. I think that reason and principle, as well as the weight of authority, sustain the doctrine of the later cases. The precise point of difference now existing in the cases is, whether a devise to one of a remainder in fee can be limited, upon a prior devise in fee, accompanied by an express power of disposition. (*Norris* v. *Beyea*, 13 N. Y 273.) It seems to be universally conceded now, that a fee may be limited upon a fee by way of executory devise, but it has been claimed that this cannot be effected where an express power of disposition is given to the first taker, for the reason, as it is argued, that the remainder is destroyed, even as an executory devise, on account of the alleged repugnancy existing between the two. It is also now quite generally conceded that this claim cannot be supported upon principle, but is attempted to be upheld solely upon the ground of authority, and as a rule of property. (*Shaw* v. *Ford*, 7 Ch. D. 669.) It seems to me impossible to conceive of a rule of property, based upon a principle which has been the subject of so much controversy, and which has never, as we shall see from the authorities, commanded general acquiescence.

A brief allusion to the general course of the law upon this branch of the subject in England will assist in illustrating the argument. It has always been the doctrine of the common

law that a remainder could not be limited upon a fee. This rule was predicated upon the presumed intention of the testator, it being argued that he had a certain interest in property to dispose of, and having devised that interest to one, there was nothing left for him to dispose of in favor of another. It followed that any attempt by the testator to create a remainder thereafter, was ineffectual and void — as being repugnant to the estate first devised. In order to overcome this difficulty, the doctrine of executory devises was originated, by which it was held that a devise inoperative at common law as a remainder, might be upheld as a gift of a future interest in property, to take effect upon the happening of some contingency, upon which the continuance of the prior estate was made to depend. Thus the doctrine of executory devises was intended to remove the objection arising out of an apparent repugnancy between the devise of a fee, and the creation of a future estate in the same property. This doctrine did not originally apply to personal property, it being held in the earlier cases, with respect to such property, that it was too transitory and unstable in its nature, to permit of the creation of future estates, and, therefore, the first devisee took the entire interest in it. In the course of time, however, the courts recognized the creation of future estates in personal property, and enforced them to a limited extent, but the rules by which their validity was determined were substantially different from those affecting devises of real estate. In fact, when both real and personal property was devised in the same language by the same instrument, it was held that the remainder created in the real estate was valid, while as to the personal property it was adjudged void as being repugnant to the prior estate. (*Forth* v. *Chapman,* 1 P. Wms. 663.)* From this rule was derived the authority in this State to hold that devises of real estate, with power of disposition added to the grant of a fee, is fatal to an executory devise, and thus, by a curious miscon-

---

* This continued to be the rule of the English courts until *Holmes* v. *Godson* was decided in 1856.

ception of authority, was evolved the doctrine that the necessity out of which executory devises were created in England — has here been made the efficient cause of their overthrow. There seems to be an irreconcilable conflict of authority on the question involved, and it would be a vain task to attempt to harmonize the views on this subject. In this contingency, there can be no guide to direct our steps, so sure and safe as that indicated by the concededly paramount rule which requires the intentions of the testator to be effectuated. In the absence of a controlling weight of authority, no motive exists for disregarding the requirements of reason and principle in the disposition of the question. Chief Justice MARSHALL, in a similar case, repeating the language of another eminent judge, said : " It has been said truly (3 Wils. 141) that cases on wills may guide us to general rules of construction ; but unless a case cited be in every respect directly in point, and agree in every circumstance, it will have little or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in the construction of wills." (*Smith* v. *Bell*, 6 Pet. 68.)

It was stated by Chief Justice KENT in 1813 that Lord THURLOW had said there were then fifty-seven cases on this point, and he adds that we know they have greatly increased since then. The present number we should hardly attempt to enumerate, and it is sufficient to say that it is quite impracticable to cite or comment upon all of them, even in this State. Those principally relied upon by the respondent to support the judgment are *Jackson* v. *Bull* (10 Johns. 19), and *Jackson* v. *Robins* (16 id. 537), and others subsequently determined upon their authority. These cases were decided mainly upon the authority of *The Attorney-General* v. *Hall* (Fitzgibbons, 314), and *Flanders* v. *Clark* (1 Vesey, 9), which were both, so far as any law established by them is concerned, relating exclusively to personal property, and the rules by which they were determined, were then wholly inapplicable to devises of real estate in England. (*Anderson* v. *Jackson*, 16 Johns. 409, citing *Forth* v. *Chapman*, 1 P. Wms. 663.) The theory

upon which the cases of Bull and Robins were decided is tersely stated by the chancellor in *Jackson* v. *Robins*, at page 589, as follows: " We are obliged to say that an absolute ownership, or capacity to sell, in the first taker, and a vested right by way of executory devise in another, which cannot be affected by such alienation, are perfectly incompatible estates and repugnant to each other; and the latter is to be rejected as void."

The court seems to refer to this circumstance as indicating a difference between executory devises and remainders, whereas, in fact, an absolute estate in one and a repugnant devise to another is equally fatal in both cases, and no more so in one than the other. It is not, I think, the mere fact that the owner of the primary estate may alienate in fee the property devised, which renders the estate limited thereon repugnant and void, but it is whether the respective dispositions are irreconcilably repugnant, or the power of disposition given to the first taker has been actually executed, so that nothing remains for the limitation over to operate upon, that is fatal to both estates alike. It is difficult to see how any actual repugnancy exists in a devise of property which, upon certain contingencies, is to become absolute in the first taker, and in the absence of such contingencies, is to go to another. (*Trustees, etc., of Auburn* v. *Kellogg, supra*.) The only effect of such a devise, reasonably construed, is to limit the interest which the first devisee takes, and such a direction no more creates a repugnant estate or infringes the statutes governing the descent and distribution of property than a devise of a life estate with power of disposition would do; and yet such devises have always been held good. (*Shaw* v. *Ford*, 7 Ch. D. 669; *Kelley* v. *Meins*, 135 Mass. 231; *Wead* v. *Gray*, 8 Mo. App. 515.) Such statutes operate only upon the interest which the possessor has in the property, and if he takes only a qualified interest, the statutes affect only such interest as the devisor has. I think the cases hereinafter cited, not only in England, but also in this State, show that it has never been a conceded rule, that a power of disposition given to the primary devisee of even real estate was nec-

essarily fatal to a limitation over of the same property. In the case immediately preceding *Jackson* v. *Bull*, in the 10th of Johnson, the same court upheld a remainder limited upon a devise of an absolute estate. I refer to the case of *Executors of Moffat* v. *Strong* (10 Johns. 17), where the testator, after giving specific parts of his real and personal property to his several sons, directed that the remainder should be valued and divided among themselves by mutual agreement. He then provided, "that if any of his sons should die without lawful issue, that then his or their parts, excepting a certain amount to his or their widow, should be divided equally among the surviving sons." The question arose over personal property, and it was held, KENT, Ch. J., delivering the opinion, that this was a good executory devise; that although the language of the first devise imported an absolute intent, yet the limitation over qualified it and gave the first devisee a life estate only. Decision to a similar effect was made in *Anderson* v. *Jackson* (16 Johns. 382), and in numerous other cases in this State. The principal cause for the conflict of authority upon the question under discussion arises from a disregard of the fundamental rule controlling the construction of wills, which requires effect to be given to the plainly expressed intention of the testator, when it is not inconsistent with some imperative rule of law. It is, of course, that a testator cannot legally create an estate which is forbidden by the policy of our law, or the provisions of our statutes, as for instance, an estate which suspends the power of alienation for a prohibited period, or offends the statute of perpetuities, or attempts a prohibited trust; but aside from such restrictions he has power to create any legal estate, and when his will clearly reveals his intention to do so, it is the duty of the court to uphold it. Giving full effect to the testator's intention does not authorize the enforcement of inconsistent and repugnant provisions any more now than formerly; but in order to lead to the rejection of any provision on that account, the inconsistency must be irreconcilable. (*Van Nostrand* v. *Moore*, 52 N. Y. 12; *Trustees of Auburn Seminary* v. *Kellogg*, 16 id. 85; *Van Vechten* v. *Keator*, 63

id. 52.) Notwithstanding the uniformity and frequency with which courts have from the earliest times laid down the imperative obligation of the rule requiring wills to be construed so as to effectuate the intention of the testator, in the application of it, they have often given greater effect to infer-ences drawn from technical language used in some parts of the instrument, than has been accorded to the most explicit require-ments, to a contrary effect, contained in others.

The correct application of the rule forbids that greater force should be ascribed to the language used in one portion of a will than to that contained in another, or that words used in creating one estate, should be held to override other provisions expressed with equal clearness and apparent deliberation. (*Smith* v. *Bell*, 6 Pet. 68; *Hoppock* v. *Tucker*, 59 N. Y. 208.) If, under the pretense of following the intention of the testa-tor, courts can adopt an arbitrary and illogical rule of con-struction which violates his plainest instructions, there would seem to be but little left of the rule so universally conceded. Notwithstanding the constant repetition of this rule by courts and elementary writers, a notion seems still to be entertained that certain forms of expression employed in a will nullify clearly expressed intentions contained in other portions of the instrument.    To correct this erroneous impression it has been thought proper to refer to some of the expressions employed in the authorities upon the subject.

In *Mann* v. *Mann*, 14 Johns 9, Thompson, Ch. J., said : " That the intention of the testator is to be sought after and carried into effect, and that such intention is to be collected from the will itself,    *   *   *    are general rules so well set-tled that they may be assumed as elementary principles of law. *   *   *    In examining into the intention of the testator in any particular clause of his will, it is no doubt proper to gather all of the light that can be thrown upon it by comparing and explaining it with other parts of the will so as to make the whole consistent, and all of the provisions harmonize together."

It is said in Williams on Executors, 926, to have been the rule in the English courts that " when the intention of the tes-

tator is plain, it will be allowed to control the legal operation of words, however technical." Many ancient authorities are cited. At page 928 he says: "Hence general words in one part of a will may be restrained in cases where it can be collected from any other part of the will that the testator did not mean to use them in their general sense." In *Bean* v. *Holley* (5 T. R. 5), it was held that courts " will give effect to the devisor's general intent, although they may thereby defeat a particular devise."

ALLEN, J., in *Terry* v. *Wiggins* (47 N. Y. 518) declared that "there is no repugnancy in a general devise to one person in terms which would ordinarily convey a whole estate, and a subsequent provision giving the same estate to another person on the happening of a contingent event." ANDREWS, J., in *Taggart* v. *Murray* (53 N. Y. 236) said that " subsequent clauses in a will are not incompatible with or repugnant to prior clauses in the same instrument when they may take effect as qualifications of the latter without defeating the intention of the testator in making his prior gift." In *Norris* v. *Beyea* (13 N. Y. 273), Judge DENIO contemplates the question which arises here, for he said : " When, after a devise or bequest in language denoting an absolute gift of the whole estate in fee, there is in a subsequent part of the same will a limitation over in the event of the first devisee dying under age and without issue, the gifts are not repugnant to each other, but the latter is a valid executory gift." The correct rule of construction I apprehend to be as stated by Lord BROUGHAM and expressed in the head-note of *Thornhill* v. *Hall* (2 Clarke & Fin. 22): " It is a rule in construing written instruments that when an interest is given or an estate conveyed in one clause in clear and decisive terms, such interest or estate cannot be taken away or cut down by raising a doubt upon the extent and meaning and application of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving that interest or estate."

These decisions tend to show that it cannot be regarded as conclusive evidence of a testator's intent not to create an estate

in remainder in one person, that he has previously devised an interest in the same property to another, which, regarded alone, might confer an absolute estate. If the devise of an apparent estate in fee may be limited and cut down by subsequent devises tending to create a remainder, it is difficult to see why the addition of a mere power should render it any more difficult for the court to carry out a plainly expressed intention of the testator. The devise of a fee-simple in property always carries with it, as one of its necessary attributes, an absolute power of disposition, and the addition thereto of express words conferring the same power cannot logically enlarge the estate. But assuming that such a distinction has been recognized in authorities, we shall refer to those which in legal effect not only ignore and discredit such a distinction, but to others holding that such a power, although expressly conferred, has not been deemed fatal to a limitation over.

Some of the cases in our courts where, under the operation of the rule referred to, it has been held that subsequent words of limitation creating a remainder controlled the apparent import of a prior devise, which, in the absence of such words, would have given an estate in fee, are those of *Heard* v. *Horton* 1 Den. 165) ; *Norris* v. *Beyea (supra)* ; *Tyson* v. *Blake* (22 N. Y. 558); *Taggart* v. *Murray (supra)* ; *Buel* v. *Southwick* (70 N. Y. 581). (See, also, *Collins* v. *Collins*, 40 Ohio, 355 ; *Woodman* v. *Madigan*, 58 N. H. 6 ; *Barnitz* v. *Casey*, 7 Cranch, 456 ; *Moffat's Ex'rs* v. *Strong, supra ; Anderson* v. *Jackson, supra.*) *Campbell* v. *Beaumont* (91 N. Y. 465), has been referred to as holding a contrary doctrine, but I do not so regard it. It was there held that the language used by the testator did not clearly indicate his intention to create a remainder. Neither can *Patterson* v. *Ellis* (11 Wend. 259), be considered an authority upon the question for the reasons stated in *Norris* v. *Beyea (supra)*. We now refer to some of the cases holding that the addition of words to a fee, giving express or implied power of disposition, is not fatal to an executory devise. In *Adams* v. *Beekman* (1 Paige, 631), the chancellor, in 1829, upheld an estate, limited upon a prior devise

in fee with implied power of disposition. (See, also, *Bradhurst* v. *Bradhurst,* 1 Paige, 331.) That of *Trustees of Auburn Seminary* v. *Kellogg* (16 N. Y. 83), arose over a will made previous to the Revised Statutes, which, after specific legacies, devised the remainder of the testator's estate, both real and personal, to his daughter Chloe, her heirs and assigns, forever, with power to her guardian to expend such part of the estate as he deemed necessary for the support, maintenance and education of the daughter during her minority, and if she should die without lawful issue, remainder over to the amount of $10,000 to the Theological Seminary of Auburn. It was held that the words "dying without lawful issue" did not mean an indefinite failure of issue, but issue living at the death of the daughter, and that the power of disposition, connected with such devise to the daughter, did not render the attempted remainder inoperative as being repugnant thereto, but constituted a good executory gift. In *Terry* v. *Wiggins* (47 N. Y. 512), a testator, after bequeathing certain real estate to his wife for "her sole and absolute use and disposal," made a further bequest to her of all his other real and personal estate and effects "for her own personal and independent use and maintenance, with full power to sell and otherwise dispose of the same if she should require it, or deem it expedient to do so," and after her decease, remainder over of the residue of his real and personal estate to the Congregational Society of Greenport. The controversy arose over lands devised under the last clause of the will. It was held that the wife took only a life estate in such lands with a qualified power of disposition, and that the remainder was not repugnant to such interest. ALLEN, J., says: "By the will, the wife took an estate for life, for the residue, with remainder over at her death to the religious society, with power in the wife during the continuance of the life estate to defeat the remainder by an act authorized by the testator, to-wit, a valid disposal of the subject-matter of the devise. Whether this would have been a good executory devise at common law is not material. The party taking under the will has died without having disposed

of the property, and the event has happened upon which, by
the terms of the will, the limitation over was to take effect."
In *Smith* v. *Van Ostrand* (64 N. Y. 278), it was held that a
bequest to the testator's wife of money to the amount of
$1,650, in lieu of dower, with power to apply so much of the
principal as might be necessary for her support, with remain-
der in the residue to his children, did not render the bequest
over void as being repugnant to the prior devise, and that upon
the death of the widow the children were entitled to so much
of the principal as remained. In *Wager* v. *Wager* (96 N. Y.
164), after making certain specific legacies the testator devised
the remainder of his real and personal property to his daughter,
but in case of her death, leaving no issue, before the death of
his wife, then all the property, both real and personal, that
shall be left by the daughter, to his wife, her heirs and assigns,
forever. It was held that although the language " shall be
left " imported a power of disposition in the daughter, that the
remainder attempted to be provided for the wife was valid and
should be upheld. It would seem from these cases that this
court at least is unequivocally committed to the principle up-
holding the validity of this devise. *Smith* v. *Bell* (6 Peters,
68) seems to involve the same principle and lends the authority
of the Supreme Court of the United States to the doctrine laid
down in the later cases of this State. The will gave all of the
testator's personal estate to his wife " for her own use, benefit,
and disposal absolutely, with remainder after her decease " to
his son. Chief Justice MARSHALL delivering the opinion, the
remainder was held good. This case has been cited with ap-
proval in that court in 3 Otto, 333, and 8 id. 324.

It will be observed from the New York cases cited that no
substantial distinction has ever been made here between per-
sonal and real property, with respect to the language from
which the testator's intention is to be inferred. (4 Kent's Com.
283.) But in England this has been otherwise, and a failure to
observe it was the occasion of the departure from principle in
this State.

An examination of the English cases shows the same conflict

there as here. (*Shaw* v. *Ford*, 7 Ch. D. 669 ; *Gulliver* v. *Vaux*, 8 De G., M. & G. 167 ; *Holmes* v. *Godson*, id. 153.)    I think, however, the weight of authority there is in favor of the validity of such a devise.

When it was finally held that an estate in expectancy could be created in personal property (2 Blackst. Com. [11th ed.] 398) slight circumstances indicating an intention on the part of the testator to give to the first devisee the power of enjoying and disposing of it were considered sufficient to defeat any attempted remainder thereof.    We shall, however, see as to real estate a different rule obtained (*Byng* v. *Lord Strafford*, 5 Beavan, 558 ; *Perry* v. *Merritt*, 18 Exch. 152), holding with respect to devises of such property, that a remainder in fee could be limited upon a fee, by way of executory devise, although the will in terms implied an intention to give to the devisee of the particular estate an absolute interest, with express power of disposition.    (2 Blackst. Com. [11th ed.] 164 ; *Bibbens* v. *Potter*, 10 Ch. D. 733 ; *Constable* v. *Bull*, 3 De Gex & Sm. 413 ; *In re Stringer's Est.*, 6 Ch. D. 1.)    Blackstone states the rule to be that a fee-simple or other lesser estate in real property may be limited on a fee-simple, by way of executory devise, although such a disposition would not be valid, at common law, as a remainder ; but this was not so as to personal property.    (1 Chit. Blackst., part 2, 319.)    This proposition remains unchanged through each edition of his Commentaries.

In the early and leading case of *Pells* v. *Brown*, decided by King's Bench, 1600, and reported Croke Jac. 590, there was a devise of land to "Thomas, his son, and his heirs forever," "and if Thomas died without issue, living, William, his brother, that then William, his brother, should have those lands to him and his heirs assigns forever."    It was held that Thomas took an estate in fee in the land, but that a limitation of a fee upon a fee was valid as an executory devise, and that Thomas having died without issue, although he had suffered a common recovery, it was adjudged a good devise to William.    To similar effect is the case of *Porter* v. *Bradly* (3 Term Rep. 143), decided in King's Bench about 1790, the opinions being deliv-

ered by KENYON, Ch. J., and ASHURST and GROSE, JJ.   In
*Beachcroft* v. *Broome* (4 Term Rep. 441), it was held, in 1793,
that under a devise to A. and his heirs, but if he died without
settling or disposing of the same, or without issue, then over,
that A. could defeat the limitation over only by settling or dis-
posing of the estate during his life-time.   In *Doe* v. *Glover* (1
Manning, Granger & Scott, 448) decided by the Court of Com-
mon Pleas in 1845, the head-note reads as follows: "A. de-
vised his copyhold and real estate to B., his heirs and assigns,
but in case B. shall depart this life without leaving any issue
of his body lawfully begotten then living, or being no such
issue, and B. shall not have disposed and parted with his inter-
est of, in and to the said copyhold estate, then he devised the
same unto and to the use of C., her heirs and assigns.   *Held,*
that the limitation over to C. was valid and took effect on the
death of B. without issue, and without having parted with his
interest by surrender or by deed in his life-time."   The opin-
ions delivered by Chief Justice TINDAL and Justices COLTMAN,
CRESSWELL and ERLE support the rule expressed in the note.

This case was also similar to the present in respect to the
devise of a life estate to the testator's wife preceding the devise
to B.   TINDAL, Ch. J., says: "This case appears to me nôt to
fall within the doctrine   *   *   *   that it is in the nature of
a condition that is repugnant to and incompatible with the
prior absolute gift."   "Strictly and properly it is an executory
devise cutting down the interest which the son was to take
upon the happening of certain events which have happened;
the only question, therefore, for our consideration is what was
the intention of the testator."   (See *Upwell* v. *Halsey,* 1 P.
Wms. 651.)   The most recent case that has come under our
observation, sustaining the validity of such a devise, is that of
*Bibbens* v. *Potter* (*supra*).

It would seem to follow from the authorities referred to that
Douw Fonda upon the death of his mother took a conditional fee
in the fourteen acres of land, subject to be defeated by the execu-
tion of the power, or his death with issue.   I think that, the
testator having by clear, apt and technical words expressed

an intention to create a remainder upon the termination of the particular estate, and such remainder not contravening any rule of law, it is the imperative duty of the court to give effect to such intention.

The provisions of the will in question affecting this subject, collocated and paraphrased, according to their legal effect, would read as follows : I give and bequeath to my said wife fourteen acres of land to hold during her natural life, and after her decease I give the same to my son Douw to hold to him, his heirs and assigns forever, provided he has lawful issue living at his death, and if he dies seized of the same without lawful issue, then to my son Henry.

Upon such a will no doubt could arise over the meaning of the testator in employing the words "heirs and assigns" in the devise to Douw, or but that he meant simply to describe the interest to be taken by Douw in case the contingency provided for the defeat of his estate did not occur, nor but that he intended by the use of the term "dying without lawful issue" to exclude Douw's devisees and collateral heirs from any interest in the property devised. Such an estate would confer no unlimited power of disposition on the devisee, and his interest determines by the happening of the contingency upon which the title is made by the will to depend. (*Gilman* v. *Reddington*, 24 N. Y. 16 ; Bouvier's Institutes, § 1699.) The language of this will, after a consideration of all of its provisions, seems to me clearly to import an intention on the part of the testator to confer only a conditional estate by the first devise, and by this construction effect is given to all of its provisions.

It is not contended that there is any language which expressly confers upon the sons an unlimited power of disposition, but such a power is sought to be implied from the use of the phrase "shall die seized of" in describing the property with respect to which the remainder is created. It seems quite unsafe to give greater weight to such an implication in determining the intention of a party than to the clear, intelligible and express declaration of his wishes. I think,

however, that if the use of the phrase " shall die seized of " indicated any power of disposition on the part of the first devisee, it was evidently a qualified power, for it assumes the retention of a part of the estate by such devisee until his death, and clearly intended to preclude him from exercising any power of disposition over it by way of testamentary devise. (*Terry* v. *Wiggins, supra ; Smith* v. *Van Ostrand, supra.*)

The power indicated by this provision would not, in a proper sense, be an absolute power of disposition, and would not, therefore, be irreconcilably repugnant to the creation of a remainder dependent upon the particular estate. It adds nothing to the interest devised and operates only as a power which, like all other powers, expires through an omission to exercise it during its existence.

I am, therefore, of the opinion that the plaintiff took title to the fourteen acres under the remainder provided for in the will of her grandfather, Jellis Fonda, upon the death of Douw Fonda, in 1837.

It is further claimed by the respondents that they are entitled to hold these lands through an adverse possession extending from the year 1835 to the commencement of this action in 1873. A brief reference to the facts is important in the consideration of this question.

Jellis Fonda died in 1791. Jannettie Fonda, his wife, and the owner of the life estate, died before 1800. Henry V. Fonda died in 1804, leaving two children, Jane Van Horn, the plaintiff, and Jellis Fonda. Jellis Fonda, the son of Henry, died in 1825, intestate and childless. Douw Fonda died in 1837, also childless and intestate. Jane Van Horn intermarried with Abram Van Horn in 1810, and they lived together as husband and wife until 1871, when Abram Van Horn died. Abram Van Horn took possession of the fourteen acres in 1825, in right of his wife, with the consent and permission of Douw Fonda, and remained until 1835, when he was dispossessed by the defendants' remote grantors. The estate of Abram Van Horn, by virtue of his interest as the husband of Jane Van Horn, in the premises, was, in 1834, sold at public sale

upon an execution issued on a judgment against him, and a redemption from such sale having been made by one McLaren, another judgment creditor of Abram Van Horn, the sheriff, in 1835, executed a deed of the premises to McLaren, under which he took and has ever since, through himself and his grantees, retained possession, claiming title thereunder.

It appears from the statement that Jane Fonda rested under the disability of coverture at all times from her dispossession in 1835 until about the time of the commencement of this action. The right to the possession of her lands, as the law stood at that time, was in her husband, and he alone could assert such right. The Revised Statutes (2 R. S. 306 [1st ed.], § 88), provide that if the party entitled to bring an action for real property is at the time the title first descended or accrued to her, a married woman, that the time limited for the commencement of an action, or making an entry upon such property, shall not be deemed to run so long as such disability shall continue. Her disability as a married woman continued until it was removed by section 5 of chapter 741 of the Laws of 1870. (*Acker* v. *Acker*, 81 N. Y. 143; *Clarke* v. *Gibbons*, 83 id. 107.)

There seems to be no reason why this statute does not apply to this case. It was held in *Devyr* v. *Schaefer* (55 N. Y. 446), that "no possession could be deemed adverse to a party who has not, at the time, the right of entry and possession."

Other objections might be taken to this defense, but the above is deemed conclusive. (*Grout* v. *Townsend*, 2 Hill, 554; *Moore* v. *Jackson*, 4 Wend. 58.)

It follows from these views that the order of the General Term should be reversed and judgment of the Special Term affirmed.

All concur for affirmance, except RUGER, Ch. J., dissenting.