Macomber, J.
There seems to be no irreconcilable repugnancy in the several provisions of this will, though the language used in section first, unexplained and unqualified, would appear to vest the title of the real estate on West Thirty-fifth street, in the executors, subject to the execution of some legal trust. It will be seen, however, that the subsequent provisions of the will, make an absolute and unconditional devise of the property and the rents, issues and profits thereof, to sundry beneficiaries. The seventh section of the will read in connection with the first, gives to the executors only the power, under certain circumstances, to sell the real estate, and invest the proceeds thereof for the purposes named. This is a simple power in trust. The terms of the Revised Statutes (§ 56 2 R. S., 729), are explicit: “ A devise of lands to executors or other trustees to be sold or mortgaged where the trustees are not also empowered to • receive the rents and profits shall vest no estate in the trustees; but the trust shall be valid as a power, and the land shall descend to the heirs, or pass to the devisees of the testator, subject to the execution of the power.” See also Van Horne v. Campbell (100 N. Y., 317), and the authorities there collated by Chief Judge Ruger.
If this is the correct construction of the will, it would seem as a matter of course, that the rights of the infants would follow the surplus arising from the sale of the real estate. Surplus moneys arising from judicial sales of real estate stand in the place of the land for all purposes of distribution among persons having vested interests or liens on the land, and for the actual purposes of this appeal, these *303 moneys must be treated as real estate. Dunning v. Ocean Bank, 61 N Y., 497.
The specified devisees are consequently entitled to the whole of the surplus money according to their respective interests therein under the will, in connection, however, with the assertion of other legal claims which were liens upon the real estate before its sale, or have become liens upon the fund since that time. It is only in case of a lien upon the property or the fund that presents a proper case for a distribution of the moneys. This has been universally assumed by the courts to be the established rule, and I know of no departure therefrom, save in this instance where the learned referee has awarded certain portions of the fund to simple contract creditors. The remedy of parties having a hen is to apportion the fund by motion and not by action, as was held in the case of Fleiss v. Buckley, 90 N. Y., 286. But a legal hen is'the very foundation of the claim. Judge Danforth there says: “The learned counsel for the appellants disclaims any intention to charge the devisees * * * personally, but declares the action is in rem to apply the fund to the parties whose superior equity entitles them to it. It is precisely this object which the proceedings already pending in court will attain, if it is hmited to those claimants who have, in any form, a hen upon the. fund, or who, by virtue of any lien upon the land, are entitled to follow its proceeds.” The court, in that case, further held that a judgment alone against a decedent’s estate, where no execution had been issued, would.not entitle the judgment creditors to share in the distribution of surplus moneys, but the judgment must be paid only in due course of administration. See also People ex rel. Short v. Bacon, 99 N. Y., 275. Judge Dan • forth again there asserts. “If the sale had produced a surplus, a different question would have been presented, and the case cited by the learned counsel for the appellants Fleiss v. Buckley (90 N. Y., 286), would be authority for holding a hen upon it, provided one had previously existed upon the land.”
Thus much relating generally to the claims allowed by the referee to Charles H. Howard, Mr. Ardold and Mr. Meyers. These gentlemen are, each' of them, simple contract creditors, and appear to have no legal hen, either upon the land or upon the fund. There is no equitable principle which the learned referee has sought to invoke in this instance by which a claim can be thus allowed and aserted against a fund in court. Claimants of that description, however just the debt, are not in a position to assert any further equitable rights against the estates of deceased persons than they would have against any indi *304 vidual who should owe them for an indebtedness resting solely upon a simple contract, except in a proper case, as the statute now is, the moneys will be ordered into the surrogate’s court to be administered upon.
But it is claimed that the decree of the surrogate of New York established Mr. Howard’s demand. That portion of the decree relating to this subject is as follows: “It is ordered, adjudged and decreed that from the proceeds of the sale of the real estate, whenever the executors shall sell the same, they shall be at liberty and are hereby authorized to reimburse themselves f©r the said sums of money so advanced, paid, paid out and expended by them, together with interest thereon to the date of such reimbursement, amounting in the-aggregate to the sum of $2,300.35.
In the first place the executors have not sold the property, ■either actually or theoretically. In the next place the surrogate’s decree was not an adjudication that they be paid these moneys, but a permission only given them to repay themselves for this claim which is now held by Mr. Howard. I am not disposed to extend the influence of that decree beyond what the strict language used therein would warrant, because it was entered by consent and apparently under an arrangement by which many persons were to receive allowances of money, and not altogether with that careful guarding of the infants’ interests which has been displayed by the guardian ad litem on this appeal.
The order of the special term confirming the referee’s report should be reversed, with ten dollars costs and disbursements, payable to the guardian ad ■ litem by the respondents personally, and the case remitted to the special term, with directions to proceed and distribute the surplus moneys in accordance with articles four, five and six of Mrs. Horison’s will as hereby construed. In the event of the life tenant’s consenting to take a gross sum, the said fund now in court, after deducting that amount and the necessary costs and expenses of these proceedings, shall be paid to the said infants or their guardian according to their respective interests therein.
Brady and Daniels, JJ., concur.