## JONATHAN THATCHER ET AL. v. JOSHUA M. DICKINSON ET AL.

**1. WHEN FORECLOSURE DECREE CANNOT BE MODIFIED.**

The original decree was rendered at the September term, 1885, of the common pleas court. At the September term, 1886, this decree was modified, and then vacated at the same term, and after it was vacated the original decree was again modified. Held. that the court had no power to modify the decree after the term, except in accordance with the provisions of secs. 5354 *et seq.*, Rev. Stat., which provide how and on what grounds an order can be vacated after the term.

**2. PERSONAL JUDGMENT UPON CROSS PETITION, WITHOUT SUMMONS.**

A personal judgment can not be rendered upon a cross-petition without a summons issuing thereon when the defendant is in default for answer to the original petition.

**3. SALE SHOULD NOT BE ORDERED SUBJECT TO AN UNDETERMINED LIEN.**

In a suit to foreclose a mortgage and to marshall liens, an order to sell can not be made subject to a certain undetermined indebtedness set forth in the answer and cross-petition of a defendant lien-holder.

**4. APPRAISEMENT SUBJECT TO UNDETERMINED INDEBTEDNESS NOT AUTHORIZED.**

Under the statute the appraisers are sworn to appraise the property at its cash value.

A court is not authorized in such a suit, to order an appraisement of the property "subject to a certain undetermined indebtedness," and an appraisement in accordance with such an order is irregular.

**5. DEFENDANT LIENHOLDER NOT TO BE DISMISSED.**

In such an action the court should see to it that all lienholders and parties interested should be made parties, and it is error in the court to dismiss, without prejudice, a defendant lienholder, and order a sale of the property subject to his undetermined lien.

**6. TAXATION OF COSTS.**

Costs, on reversal, may be charged against one defendant in error.

ERROR to the Court of Common Pleas of Putnam county.

SENEY, J.

One of the defendants in error, George H. Robbins, brought an action in the court below against the plaintiffs in error, Jonathan Thatcher and Leah A. Thatcher, upon a promissory note, secured by mortgage upon the undivided 2-26ths part of certain premises described in his petition, alleging that the other defendants in error claimed some lien or estate in the same premises; praying for a personal judgment upon his note, foreclosure of his mortgage, and that the liens might be marshalled and priorities established.

The defendant in error, Joshua M. Dickinson, filed an answer and cross-petition setting out a promissory note, executed by Jonathan Thatcher and secured by the same mortgage described in the petition, and praying for a foreclosure of the mortgage; he also filed a second answer and cross-petition, averring that since the commencement of the action he had purchased of the plaintiff, Robbins, the note upon which Robbins' action was founded, praying for judgment upon the note thus purchased of Robbins, and in addition praying for judgment upon the note set out in his first answer; also for a foreclosure of his mortgage.

The defendants in error, Marquis & Kennedy, filed an answer and cross-petition, setting forth a mortgage executed by the plaintiffs in error, covering the entire lot or premises upon which the plaintiff had only a lien upon the undivided 2-26ths part.

The questions made in this court render it unnecessary to refer to the other pleadings in the case. The plaintiffs in error were duly served with summons issued upon the petition of plaintiff, and no other summons was issued in the action.

The plaintiffs in error failed to answer and were in default.

Upon this state of the pleadings, the cause was heard upon the pleadings and evidence at the September term, 1885, of the court of common pleas of this county, and that court made a finding in favor of Dickinson against the plaintiffs in error for the amount of the note set forth in Robbins' petition and also the amount of the note set forth in Dickinson's cross-petition, and rendered a personal judgment for the same; also foreclosing the mortgage and ordering the premises described in the petition, being the undivided 2-26th part of a certain lot, to be appraised, advertised and sold according to law, subject to the 2-26th part of a certain indebtedness set forth in the answer and cross-petition of Marquis & Kennedy.

In the same decree is a finding of the amount due Marquis & Kennedy upon their mortgage, and declaring it the first and best lien upon the premises.

At the April term, in 1886, an order was made, setting aside the appraisement made under the former order of the court.

At the September term, 1886, another order was made setting aside another appraisement made under the former order of the court, and in addition thereto modifying the original decree; at the same term another order was made vacating this modification made at this term, and another decree rendered in favor of

Marquis & 'Kennedy upon the same cause of action alleged in their answer and cross-petition, and ordering the premises sold, subject to the last decree rendered in favor of Marquis & Kennedy.

At the April term, 1887, an order was made, setting aside the appraisement made under the order made at the September term, 1886, and under this order the premises had been three times appraised and twice advertised and offered for sale and not sold for want of bidders, and the court fixed the price at which the property should be sold at $900, subject to the indebtedness on said entire property, and ordered the same sold. At the same term, 1887, the premises were ordered sold at not less than $100, subject to the same indebtedness.

Under this last order the property was sold to the defendant in error, Joshua M. Dickinson, and at the same term the sale was confirmed and deed ordered.

This is the state of the record in this case. The plaintiffs in error claim that each and every order is erroneous, and seek by a petition in error in this court to reverse them. They present several questions—and some of them several questions in one. Each branch thereof I will notice separately.

First—The first and original decree was rendered at the September term, 1885, of the common pleas court. At the September term, 1886, this decree was modified, and then vacated at the same term. Of course, this action of the court, if error, did not prejudice any one; but after it was vacated the original decree was again modified. Has the court the power to thus modify a decree after term?

Section 5354 Rev. Stat., provides how an order may be vacated, and upon what grounds, after term, and reads as follows:

Section 5354. A court of common pleas, or a superior or district court, may vacate or modify its own judgment or order, after the term at which the same was made—

1. By granting a new trial for the cause, within the time and in the manner provided in section fifty-three hundred and forty-three (fifty-three hundred and nine.)

2. By a new trial granted in proceedings against defendants, constructively summoned, as provided in section five thousand and forty-eight.

3. For mistake, neglect or omission of the clerk, or irregularity in obtaining a judgment or order.

4. By fraud practiced by the successful party in obtaining a judgment or order.

5. For erroneous proceedings against an infant, married or person of unsound mind, when the condition of such defendant does not appear in the record, nor the error in the proceedings.

6. For the death of one of the parties before the judgment in the action.

7. For unavoidable casualty or misfortune, preventing the party from prosecuting or defending.

8. For errors in a judgment, shown by an infant in twelve months after arriving at full age, as described in section fifty-three hundred and thirty.

9. For taking judgments upon warrants of attorney for more than was due the plaintiff, when the defendant was not summoned, or otherwise legally notified of the time and place of taking such judgment.

10. When such judgment or order was obtained, in whole or in a material part, by false testimony on the part of the successful party, or any witness in his behalf, which ordinary prudence could not have anticipated or guarded against, and the guilty party has been convicted. [74 v. 115, sec. 534.]

Section 5357 and sec. 5358 provide the manner in which it can be done, and they read as follows:

Section 5357. The proceedings to correct mistakes or omissions of the clerk, or irregularity in obtaining a judgment or order, shall be by motion, upon reason-

Vol. III.                    CIRCUIT COURTS.                    **85**

**144**          Jonathan Thatcher et al. v. Joshua M. Dickinson et al.

able notice to the adverse party or his attorney in the action; but the motion to' vacate a judgment because of its rendition before the action regularly stood for trial, can be made only in the first three days of the succeeding term.   [51 v. 57, sec. 535.]

Section 5358.   The proceedings to vacate the judgment or order on the ground mentioned in sub-divisions four, five, six, seven, eight, nine, and ten, of section fifty hundred and fifty-four, shall be by petition, verified by affidavit, setting forth the judgment or order, the ground to vacate or modify it, and, if the party applying was defendant, the defense to action; and on such petition a summons shall issue and be served as in the commencement of an action.   [74 v. 115, sec. 536.]

Section 5359 provides what the court should first hear and determine.

Section 5359.   The court must first try and decide upon the grounds to vacate or modify a judgment or order before trying or deciding upon the validity of the defense or cause of action.   [51 v. 57, sec. 537.]

Section 5360 provides when the judgment shall be vacated.

Section 5360.   A judgment shall not be vacated on motion or petition until it is adjudged that there is a valid defense to the action in which the judgment was rendered; or, if the plaintiff seeks its vacation, that there is a valid cause of action; and when a judgment is modified, all liens and securities obtained under it shall be preserved to the modified judgment.   [51 v. 57, sec. 538.]

The record does not disclose that any of the requisite steps were taken, and the court was powerless to modify the original decree without these being taken, and when the court so acted, the action was erroneous.

The second question is, can a personal judgment be rendered upon a cross-petition without a summons issuing when the defendant is in default for answer to the original petition.

The defendant claims that this is authorized by sec. 5071.   That section reads as follows:

Section 5071.   The defendant may set forth in his answer as many grounds of defense, counter-claim, and set off as he has, whether they are such as have been heretofore denominated legal or equitable, or both; he may claim therein relief touching the matters in question in the petition against the plaintiff, or against other defendants in the same action; and each must be separately stated and numbered, and they must refer in an intelligible manner to the causes of action which they are intended to answer.   [51 v. 57, secs. 84, 93.]

To give this section a proper construction, it must be construed in connection with sec. 5072, which reads as follows:

Section 5072.   The counter-claim mentioned in the preceding section must be one existing in favor of a defendant, and against a plaintiff between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action.   [51 v. 57, sec. 94.]

From this it will be seen that the affirmative relief granted a defendant against a co-defendant must be such relief as arises or is connected with the subject of the action.   What is the subject of the action in the case at bar?   The liens that may be held upon the mortgaged premises.   Where one defendant can obtain affirmative relief against a co-defendant, he may defeat his lien. He may plead certain facts that would estop him from asserting his lien, and have his lien cancelled, but he cannot have any other relief against his co-defendant, except such as grows out of the cause of action alleged in the petition.   Any other construction as suggested by counsel, would involve innumerable controversies, both at law and in equity, which would never end.   It would notify a defendant of a suit pending for one thing, for which if he happened to be in default judgment might be taken against him for an entirely different cause of action.   The statutes of Ohio authorized a

party to be notified of a suit pending against him by summons, and when it is for
the recovery of money only, the summons must notify him of the sum for which
judgment will be taken against him if he fail to appear, and if he fail to appear,
judgment cannot be taken against him for a larger sum.    This is provided for in
sec. 5037, Rev. Stat., and is no doubt based upon the ground that every one is
entitled to his day in court.    How stands the case at bar?    The summons notified
the defendant that if he failed to appear, judgment would be taken against him
for a certain sum, and instead of this sum a judgment is taken against him for a
larger sum, and part upon an entirely different cause of action.    This was
erroneous.

The next question—could the court render the original decree, to-wit: "an
order to sell subject to the 2-26th part of a certain indebtedness set forth in the
answer and cross-petition of Marquis & Kennedy."

Before lands can be sold in Ohio at judicial sale, they must be appraised.

Section 5389, provides how they shall be appraised.

Section 5391, provides for what sum the lands can be sold, viz.: two-thirds
of appraised value.

So in the case at bar, it was the legal right of the judgment debtor to have the
premises appraised at their cash value, and when thus appraised it was his legal
right that the proceeds of that sale should amount to not less than two-thirds of
the appraisement.    Further, it was his legal right that before the appraisement
was made, the appraisers should make oath that they would thus appraise the
premises.    All these requirements presuppose that the court has so ordered.    Yet
in this case, if the appraisers did their sworn duty, they did not appraise these
premises at their cash value, "but appraised them subject to an undetermined in-
debtedness."    This the law did not authorize, and their appraisement was void.
If this is true, it follows that the court could not authorize them or the sheriff to
do an unlawful act; so this part of the original decree is erroneous.

In this case, the sale was not made upon the original decree, but upon the
modified decree as made at the September term, 1886.    As I have stated, the
modified decree was erroneous, and being erroneous it carries with it all acts done
under it.

Another question is made as to the power of the court to fix the amount at
which the premises were to be sold.    As the views we have expressed dispose
of the case, and the question does not necessarily arise, it is unnecessary to de-
cide it.

The court below by its order dismissed the other cross-petitions.

The original petition asks among other matters, for the marshalling of the
liens and that their priorities may be adjusted.    This, in justice to lien-holders as
well as the judgment debtor, should be done, upon the one hand, that all liens
may be paid, and on the other hand, that the debtor's property may be appraised
and sold free of any complication.    It is made the duty of the court when it
appears that all parties for a proper determination of the cause are not before the
court, that the court shall order them to be made parties.    In the case at bar the
court ordered a necessary party who was asserting a lien, to be dismissed without
prejudice.    This prevented the marshalling of the liens and the adjusting of their
priorities, and of course the right would still remain in the necessary party to con-
test the lien of the plaintiff below, as well as the defendants, Marquis & Kennedy,
and if this contest would be successful it might or might not inure to the plaintiffs
in error.    The order of the court therefore is:

All decrees and orders made in this case will be reversed.    The previous
judgment rendered against the plaintiff in error will be modified so that the per-
sonal judgment will be in the sum due upon the note set out in the petition at the
time judgment was rendered in the court below.    The defendant in error, Dick-
inson, will pay the costs of this proceeding in error, for which execution is
awarded.    The cause will be remanded for further proceedings according to law,
and to carry the order for costs into execution.

Vol. III.                    CIRCUIT COURTS.                    · **87**

152        Eliza Ann Clark, Ex'x, v. Trustees of Hardwick Seminary et al.

**152**            **CONSTRUCTION OF A DEVISE.**

[Cuyahoga Circuit Court, January Term, 1888.]

Baldwin, Haynes and Woodbury, JJ.

(Judge Woodbury, of the Seventh Circuit, taking the place of Judge Upson.)

* ELIZA ANN CLARK, EXRX. v. TRUSTEES OF HARDWICK SEM-
INARY ET AL.

1. DECLARATIONS TO SCRIVENER OF A WILL NOT ADMISSIBLE.

Patent ambiguities in a will must be solved by construction, not by evidence. Hence
the declarations by a testator to the scrivener of the will, with proof of the provisions
of a will of the testator from which the will in question was copied, are not admissible
to explain conflicting provisions of the will itself.

2. ABSOLUTE TITLE GRANTED WITH POWER OF DISPOSITION.

The will of James F. Clark contained the following provisions:
Item 4. "I further give and bequeath to my wife Eliza Ann Clark, two hundred and
fifty thousand dollars in United States Government Bonds, and if there shall not be
sufficient of said bonds, then the deficiency to be made up of other bonds or securities
of my estate, to be selected by her. And also, during her natural life, the rents and
income of my store, No. 92 Superior street, in the city of Cleveland." Item 32. "The
residue of my estate I give to my wife Eliza Ann Clark, to be expended for her sup-
port during her lifetime, and to be disposed of by her in any way she may think
proper." Item 33. "I further devise and bequeath that portion of my estate, real
and personal, of which the use and income is given to my wife, Eliza Ann Clark,
and to my daughter, Marion C. Tyler, and so much of any residue given to my wife
for support and disposition, as shall not have been expended, and any remainder of
my estate not herein disposed of, to be distributed at the death of my wife as to the
estate so devised for her life, and on the death of my daughter as to the estate in
which she has a life use, as following." *Held,* that under this will the wife took under
item 32 the absolute title to the residue of the property with a power of disposition.

WOODBURY, J.

This is a petition filed by the plaintiff, Eliza Ann Clark, executrix, for the
purpose of having construed by the court, certain provisions in the will of her late
husband, James F. Clark, deceased.

The plaintiff alleges in her petition that she has been appointed executrix
of the will of her husband, which will has been proven in the probate court of this
county; that she has caused an inventory and appraisal of all the property of said
estate to be made, excepting the personal property in the dwelling-house, or
homestead, of said decedent, and in the stables annexed thereto; that the prop-
erty was appraised at $1,118,711.48; that included in said appraisal was real estate
appraised at $161,000, of which the homestead was appraised at $85,000, and the
store mentioned in said will at $30,000. She alleges that she is the widow of
James F. Clark, and has not yet elected to take under the will; that since the pro-
bate of said will she has paid off the legacies mentioned in said will down to item
thirty-two of the will, with the exception of the provision to her in item four of
the will. Then she alleges that upon certain provisions of the will, and upon the
facts bearing upon the intention of the testator, as here stated, differences of opin-
ion exist between certain beneficiaries under said will as to its proper construction
and legal effect in the particulars following, to-wit: It is claimed that under the
fourth clause of the will, in which the testator bequeaths to petitioner $250,000 in
United States Government bonds, or their equivalent, your petitioner takes only
a life interest therein, and the income arising therefrom during her natural life,
and that upon her decease said bonds, or their equivalent, belong unincumbered

---

* The petitioner in error to supreme court, in this case was dismissed by the plaintiff
in error, March 13, 1888. The case was cited with approval in Bashore v. McKenzie, 1
Ohio, Dec., 433.

to said estate, and are to be administered and distributed as such, while your petitioner insists that they are given to her absolutely, and may be disposed of by her at her own will and pleasure. She further alleges that under the thirty-second clause of said will, where the testator provides as follows: "The residue of my estate I give to my wife, Eliza Ann Clark, to be expended for her support during her life-time, and to be disposed of by her in any way she may think proper," it is claimed by some of the beneficiaries provided for in said will, that upon a proper construction of said clause your petitioner is entitled to apply only a sufficient amount of the property therein referred to, or the income thereof, to provide for her support during her natural life, while, on the other hand, your petitioner insists that the intention of the testator, as therein expressed, fully empowers your petitioner to make such disposition of the whole or any part of the property as she may desire and think proper to do without accountability to said estate or any of the other persons or corporations in said will provided for.

I need not read any more of the petition, but will proceed directly to the main question involved in the case.

First, as to the question of the admissibility of certain evidence. It is the testimony of J. D. Cleveland, who testifies substantially, without repeating his testimony, that in July, 1883, J. F. Clark came to his office with a will which he had sometime prior to that date executed; that by the provisions of the fourth item of that will he had bequeathed to his wife during her natural life $250,000; that James F. Clark then told him that he desired to change that item so that his wife would have the $250,000 out and out, and that there were such alterations made in the will as appear now in the will in controversy; that he made such changes as were then requested by Mr. Clark, and when the new will was drawn it was read over by Mr. Clark, who said it was right, and that he then executed it, and the old will and memoranda, which he had with him, were then destroyed.

Now the question is whether or not this evidence is competent. It is insisted on behalf of the petitioner in this case that the evidence is competent; that the court is entitled to be placed in the same position as the testator was at the time of the execution of this will; that petitioner may not only offer in evidence or show by parol what the property of the testator consisted of, its nature, but in addition who were his family, the claims they might have upon his bounty, and in fact all of that class of circumstances which tend to prove the condition of the testator; and that she may go further and show, for the purpose of placing the court in the position of the testator at the time of the execution of the will, the instructions which he gave to the draughtsman of the will, and the contents of any memoranda which were furnished by James F. Clark to Mr. Cleveland when he drew the will.

The object and purpose of this evidence is to enable the court to place a proper construction, not only upon item four of the will, but upon the first paragraph of item 33 of the will, and the last paragraph of that item, as well as a paragraph to be found in the last item, to-wit, item 34, of this will. The lines to which I refer in item 33, are: "I further devise and bequeath that portion of my estate, real and personal, of which the use and income is given to my wife, Eliza Ann Clark, and to my daughter, Marion C. Tyler." And the item further reads: "And so much of any residue given to my wife for support and disposition, as shall not have been expended, and any remainder of my estate, not herein disposed of, to be distributed at the death of my wife as to the estate so devised for her life, and on the death of my daughter, as to the estate in which she has a life's use." The paragraph which I mention in the last part of item 34 reads: "My executrix is authorized to make sales of any stock or other securities herein set apart for my wife's income excepting government bonds, and to re-invest the proceeds of the same as she may deem necessary to secure safety and productiveness of income."

Now, the object of this evidence is to show that while, in fact, those two items

to which I have referred had perfect application in the old will to item four, by this alteration in the new will in controversy those two provisions can have no just application to item four as it now stands, because it is contrary to the intent of the testator, as thus explain. Well, it would seem that if there ever was a case where this testimony should be held to be admissible, that this is a case of that character. It seems as though the application of any rule which would have the effect of excluding this testimony, and, perhaps, in fact, to defeat the real intent of the testator, would work a great wrong and injustice, and that through the rules of evidence.

There is nothing better settled than that the intention of the testator is to be derived from the will itself. You cannot, by parol, add words to a will, nor can you by parol take from a will any of its provisions; but, as I have said, the intent of the testator is to be derived from the will itself and it cannot remain in parol. The will must speak for itself.

There are many cases which go to the extent of holding that a latent ambiguity may be explained by parol, and the ground or reason of this is that a latent ambiguity is one which arises outside of the will. There is no ambiguity in the will itself when you come to read the will, but when you come to apply it to the objects mentioned or specified in the will, there may arise, and often does, an ambiguity. But such ambiguity, however, is raised not by the terms of the will, but by parol, and, therefore, it is held that parol evidence raising the ambiguity may be met and explained by parol evidence. But an ambiguity which arises upon the face of a will is not a latent ambiguity. It is what is known and denominated as a patent ambiguity, and upon this question the authorities seem, as well, to be almost universal in their holdings.

The case of Pruden v. Pruden, 14 O. S., 251, which has been cited, is a case in which the court say, commencing on page 256:

"It is thus made very evident that the widow may have her support charged upon this property, if such was the intention of her husband, without in the least infringing upon the principle of law relied upon, or interfering with the bequest made to the heirs, if that bequest, by the will, is limited to the balance of the property remaining at her death unappropriated to this purpose. And we now proceed to inquire whether the will is open to this construction. This must depend upon the intention of the testator, and we are bound to gather his intention from what he has said in the will. As said by this court in Worman's Lessee v. Teagarden, 2 O. S., 380, 382, to allow the natural import of this language to be varied or contradicted or omissions supplied or apparent ambiguities to be removed, by parol evidence, would be to repeal the law requiring. it to be in writing, and to introduce all the uncertainty, fraud and perjury the statute was designed to prevent. But language at best, and when used with propriety, is a very imperfect vehicle of thought, and we seldom appreciate correctly its nicer shades of meaning without an accurate knowledge of the persons and things to which it is applied. It is in view of this fact that the law not only allows, but requires the instrument to be read in the light of the surrounding circumstances, and permits the introduction of such extrinsic evidence as will enable the court to place itself in his situation to see things as he saw them, and to apply his language as he understood and intended it. Or, as better expressed by Chief Justice Marshall in Smith v. Bell: 'In the construction of ambiguous expressions, the situation of the parties may, very properly, be taken into view. The ties which connect the testator with his legatees, the affections subsisting between them, the motives which may reasonably be supposed to operate with him and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words and ascertaining the meaning in which the testator used them.' "

In the case of Lewis v. Douglass, 14 R. I., 604, the court held:

"Patent ambiguities in a will must be solved by construction. not by evidence.

Hence, the declarations of a testator to the scrivener of the will are not admissible to explain conflicting provisions of the will itself."

In this case there is some conflict in the provisions of the will itself. In item one of the will he says:

"I give, devise and bequeath to my wife, Phebe L. Lewis, the interest of $2,600 in the First National Bank in Hopkinton, R. I., and also the privilege of the south half of the house, and also the south garden, and also the keeping of a cow the year round, and barn room," etc.

Now in item two he says, "I give and bequeath to my wife, Phebe L. Lewis, after all my just debts and funeral charges are paid, all of my remaining property during her natural life and widowhood."

Now, it became a question whether or not the farm upon which they are residing was included in this last provision or item two of this will. There was a further provision, as follows:

"I, Moses B. Lewis, do appoint Benjamin T. Lewis executor of my last will and testament, to dispose of all of my real and personal property that I am possessed of at my decease, and what remains of that property to be divided equally between my three sons, Moses D. Lewis, Daniel C. Lewis and Benjamin T. Lewis."

So that there seemed to be a conflict in the provisions of the will and an uncertainty as to whether or not he had given to his wife a life estate in the farm. or whether it was to go over with the remainder at the time of the death of the testator. Upon the trial in regard to the title to this real estate "the plaintiff offered to prove by Stanton Austin, of Hopkinton, that he wrote the said last will and testament at the request of the testator on the day it was executed, namely, July 20, 1871, and also that the testator meant by the clause therein as follows: 'I give and bequeath to my wife, Phebe L. Lewis, after all my just debts and funeral charges are paid, all of my remaining property during her natural life and widowhood;' in the connection in which the same was used in said will, and also to prove by said witness that there was in reality no conflict in the provisions of said will, understanding them as the testator did, so far as the plaintiff was affected thereby; and also to explain by said witness the latent ambiguities in said provision of said will whereby the interest of the plaintiff in the property of the testator that was disposed of by said will was affected."

The court in passing upon this question say:

"The plaintiff, having duly excepted to the refusal of the court to permit the testimony of Stanton Austin to go to the jury, and to the ruling of the court that such testimony was inadmissible, and also to the declination of the court to give the instructions to the jury requested, and to the instructions as given, now petitions for a new trial, basing her petition upon these exceptions.

"The ambiguity sought to be aided by the testimony offered was not, as the plaintiff's counsel supposes, a latent ambiguity; that is, one arising upon the evidence in aid of which extrinsic evidence is admissible, as, for instance, where it appears that there are two persons or estates both answering equally the description in the will, and the question is who or which the testator intended; but was an ambiguity arising from the apparent conflict of the provisions of the will itself, and was, therefore, a patent ambiguity, or one appearing on the face of the instrument. Such an ambiguity is to be removed, if at all, by construction and not by averment. To permit parol evidence to be given in aid of such an ambiguity would not only be in violation of the well settled rule that the testator's intent is to be ascertained by the will itself, but would also be contrary to the statute which requires wills to be in writing.

"The declarations or instructions of the testator were, therefore, inadmissible for the purpose of showing what the testator meant by the provisions of the will, and were properly excluded."

And upon this question numerous authorities are cited.

Another case bearing upon this question is found in the case of Griscom v. Evens, 40 N. J.   In the syllabus the court hold:

"Extrinsic evidence of the circumstances, situation and surroundings of the testator and of his property is legitimate to place the court which expounds the will in the situation of the testator who made it, and thus enable the court to understand the meaning and application of the language he has adopted. But the testator's intention must ultimately be determined from the language of the instrument as explained by such extrinsic evidence, and no proof, however conclusive in its nature, can be admitted with a view of setting up an intention inconsistent with the writing itself.   The only exception to the foregoing rule is that the declaration of the testator may be resorted to in case of a latent ambiguity which arises where there are two or more persons or things each answering exactly to the person or thing described in the will.   In such an event, parol evidence of what the testator said may lawfully be adduced to show which of them he intended; but such evidence will not be allowed to show that he meant a thing different from that disclosed in the will.   The testimony of the scrivener who drew the will, that the testator came to his house with the items on a piece of paper for each son; that he had these premises marked on it 'my Cropwell farm, containing 85 acres,' and that the words 'conveyed to me by the heirs of my deceased wife,' were not on that paper, but were inserted in the will by the scrivener in his own language which he used as an additional description to distinguish the premises from the testator's other property, is illegal."

This case very nearly reaches or is analogous to the question which we have before us now.

There is a note to be found in the case of Good v. Good, in the 66 American Decisions, at the bottom of page 635:

"Parol or extrinsic evidence is not admissible for the purpose of varying, controlling, contradicting, or even explaining the terms of a will, except in cases of latent ambiguity."   And upon this proposition numerous authorities are cited. "Nor is such evidence admissible to show that the testator intended to make a particular bequest but failed to do so through mistake or inadvertence.   The disappointed intention of the testator cannot be set up by parol or extrinsic evidence."   Citing numerous authorities upon this proposition.

And further along.   "Extrinsic evidence is admissible to explain what the testator has written, but not to show what he intended to have written.   But parol or extrinsic evidence of the circumstances and surroundings of the testator and of his property, is admitted in order to place the court which expounds the will in the same position, in that respect, as the testator who made it."

Now, when we come to look at this evidence, if it has any application at all to this case, it is to the provision which we find in item 33 of the will, and also in item 34 of the will, and it is to show by inference that those items cannot now at least apply to item four in the will.   We cannot see how, or upon what principle, this evidence can be held to be admissible.   We have been unable to find an authority that comes any nearer than the cases which we have read upon this proposition, and very reluctantly, indeed, we come to the conclusion that this evidence is incompetent, and the motion made to withdraw the evidence is sustained.

We next come to the first proposition, then, as to the construction of this will.   In item four of the will, the testator provides as follows:

"I further give and bequeath to my wife, Eliza Ann Clark, two hundred and fifty thousand dollars in United States Government bonds, and if there shall not be sufficient of said bonds, then the deficiency to be made up of other bonds or securities of my estate, to be selected by her.   And also, during her natural life, the rents and income of my store, No. 92 Superior street, in the city of Cleveland."

One of the defendant's counsel insists that this clause, when construed with items 33 and 34, gives to Mrs. Clark but a life estate or interest in this $250,000. Another counsel appearing in the case for the trustees of Oberlin College im-

pleaded with the trustees of Hardwick Seminary, does not take this view, but seems inclined to the opinion, without arguing the proposition, that item four in fact gives to Mrs. Clark the $250,000 absolutely. In the argument of the case another counsel representing Oberlin College takes no position, one way or the other, except in the printed argument which is submitted to the court, in which, in the construction of item 32 of the will, he argues that item four of the will gives an absolute interest in this $250,000. But we have this matter for construction inasmuch as it is insisted upon by one defendant in the case that she takes but a life interest, and so we proceed to that proposition.

The clause spoken of in item 33 is, "I further devise and bequeath that portion of my estate, real and personal, of which the use and income is given to my wife Eliza Ann Clark, and to my daughter, Marion C. Tyler." It will be observed that the words "real and personal" are here used, and an examination of the will shows that at no time prior to this was there anything given to Mrs. Clark to which this could apply, so far as the term personal property is concerned, unless it be found in item four of the will, and therefore, it is said that by inference and by construction this provision applies to item four, and by implication it has the effect to reduce what would otherwise be a positive bequest, or an absolute bequest of the $250,000, to a life estate.

It is also insisted by counsel that the provision in item 34, which provides: "My executrix is authorized to make sales of any stocks or other securities herein set apart for my wife's income excepting government bonds, and to re-invest the proceeds of the same as she may deem necessary to secure safety and productiveness of income," applies, as well, to item four of the will, and that under stress of those two provisions, the one in item four is thus reduced to a life estate.

Now, in determining this we are to look to the intention of the testator. What is expressed in item four of the will? What intent is disclosed by reading item four? Is there anything in the language in that item that tends to show that the testator intended to give her either a life estate or the full estate? True, these words are used, following the bequest of the $250,000: "And also, during her natural life, the rents and income of my store, No. 92 Superior street, in the city of Cleveland." There is certainly nothing in this provision that indicates that the testator intended thereby to give only a life estate or interest in the $250,000. So that the fair inference to be drawn from it is that the testator, when he wrote this item four of the will, had in view the giving to his wife absolutely the $250,000. That is the reasonable construction of this, and I think it is the construction which would be given by everybody upon this provision of the will. In the same item he had in view and before his mind the giving of an absolute and a life estate. So that the two subjects, the giving of an absolute interest in the $250,000 to his wife, and the giving to her a life interest in the store, was before him and under consideration. In this will the testator has had both of these subjects often before him and under his consideration. In twenty-two items of the will, before you reach item 32, he had given an absolute estate or bequest, and he used substantially the same language that he used in item four. In six items of the will he had carved out a life estate or a life interest. So that the difference between an absolute bequest or an absolute estate and a life estate was constantly before him before or at the time that he reached item 33 of this will.

Then again in item five he has given to this adopted daughter, Marion C. Tyler, the sum of $50,000, "which amount is to be made up and selected from any moneys, public securities, bonds, notes, or choses in action of which I may be possessed, and delivered in payment of this legacy."

Now, no person insists in this case that this item is cut down to a life interest, and when we turn to item 33 of this will, we find that the language there used is, "I further devise and bequeath that portion of my estate, real and personal, of which the use and income is given to my wife, Eliza Ann Clark, and to my daughter, Marion C. Tyler." Prior to this item in this will he had carved out a

Vol. III. CIRCUIT COURTS. 93

152 Eliza Ann Clark, Ex'x, v. Trustees of Hardwick Seminary et al.

life interest in real estate, both for his wife and for Marion C. Tyler; but nowhere in direct language had he carved out a life interest in personal property, or in any moneys, bonds, etc. If we consider item 33 alone, and if it should be construed to cut down the wife's estate under item four in this will to a life interest, it must have exactly the same effect as to item five wherein he gives to his daughter $50,000 under this will, for as between item 4 and item 33, and item 5 and item 33, they stand exactly alike and upon the same terms and conditions, and the construction which should be given to one is the construction which should be given to the other, unless the provision in the latter part of item 4 of this will is to be held of sufficient force and effect in the construction of the will as to authorize us to say that item 33 does not apply to item 4, nor to item 5, but this further provision does, to-wit: "My executrix is authorized to make sales of any stocks," etc.

Now how does this question arise in this case? By item four of the will an absolute estate is given. The testator has there clearly expressed his intent. Is there anything shown in this will to the contrary? Is there anything shown here which by positive or express language cuts down the absolute estate or interest found in item four to a life interest? If it is done, or can be done, it is only by implication, it is only by construction. The intent is as manifest and as strong in item four as can be raised by implication and construction from anything which you may find in items 33 and 34.

There are some rules of construction which we think justly apply to this proposition, and clearly settle the question.

"Where the language of one part of a will is not easily reconciled with that used in another, principal and subordinating provisions should be construed in their due relation to one another. Thus, the interest which is disclosed in the express clause of a bequest ought to prevail over the language used in making other provisions subsidiary to this bequest, unless plainly modified or controlled thereby."

Again: "A clearly expressed intention in one portion of a will is not to yield to a doubtful construction in any other portion of the instrument."

Again: "Nor is a clear gift in one part of a will to be cut down or out by doubtful or ambiguous expressions in another part, or upon conjecture; but the intention to cut down or out, or the inconsistent provision, must be indicated with at least reasonable certainty."

And upon this proposition I cite Shouler on Wills, sec. 478, and 1 Jarman on Wills, 479.

"Where a particular estate is devised, we cannot by any subsequent clause collect a contrary intent by implication." Campbell v. Beaumont, 91 N. Y., 469.

"A clear gift or devise is not to be controlled by the reasons assigned for making it, nor by any inaccurate words of reference or recital which may subsequently occur in the will, nor by reference or argument in general." Shouler on Wills, sec. 478; 1 Jarman on Wills, 483-485; 14 Vesey, 27; 8 Vesey, 42.

Now we come to a rule which is recognized by the supreme court of the state of Ohio, in the case of Collins v. Collins, 40 O. S., 353.

"It is a rule of the courts in construing written instruments, that when an interest is given or an estate conveyed in one clause of the instrument in clear and decisive terms, such interest or estate cannot be taken away or cut down by raising a doubt upon the intent and meaning and application of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate." Citing 2 Clark & Finn, 22, Thornhill et al. v. Hull.

In the case of Ward et al. v. Amory et al., 1 Curtis, 424, the court say:

"There is one general observation which I think entitled to weight; in construing a will so inartificially drawn as this is, it is unsafe to set aside the express terms employed by the testatrix in the very clause in which the bequest is made, because it is found not easily reconciled, or, perhaps, not completely

reconcilable with language used in other parts of the instrument. It may reasonably be assumed that when the testatrix made the provision that her children should take the income through trustees during their lives, she was aware of the effect of the terms she employed, and intended what she there expressed; while in making other provisions subsidiary to this bequest she might be inattentive to the effect of her language upon the bequest already made, and which may be supposed in some degree to have passed out of her view; and therefore, when an intent has been once clearly expressed in a will, and the instrument then goes on to deal with other subjects, this clear intent should prevail, unless it is, plainly modified or controlled by what is subsequently said."

And in this proposition he follows the rule laid down by Jarman, found in 1 Jarman on Wills, 873.

Now, then, these authorities seem to settle this one proposition—that a plainly expressed intent in one clause of a will is not to be cut down or out by any provision found in a subsequent clause of the will, inferentially; that you are not to construe away, by inference and implication, the positive provisions of a will, although they may be found in some other or subsequent portion of the will. And applying this proposition to the will in question, we think clearly that item four is not to be reduced by what may be found in item 33 or item 34 to a mere life estate, but that, on the other hand, Mrs. Clark takes the absolute interest.

The next controversy in this case arises out of the construction to be given to item 32 of the will. This item provides: "The residue of my estate I give to my wife, Eliza Ann Clark, to be expended for her support during her lifetime, and to be disposed of by her in any way she may think proper."

Item 33: "I further devise and bequeath that portion of my estate, real and personal, of which the use and income is given to my wife, Eliza Ann Clark, and to my daughter, Marion C. Tyler, and so much of any residue given to my wife for support and disposition, as shall not have been expended, and any remainder of my estate, not herein disposed of, to be distributed at the death of my wife as to the estate so devised for her life, and on the death of my daughter, as to the estate in which she has a life use, as follows:"

It is insisted upon the part of the petitioner that under item 32 of the will, she takes absolutely the whole remainder which amounts to somewhere in the neighborhood of five hundred thousand dollars; while on the other hand it is insisted that item 32 gives in fact but a life estate or interest in the remainder. Following item 32, there are specific bequests to be paid out of the remainder amounting to $122,000, and then follows this provision:

"And that of the remainder there be paid one-third share to the trustees of Hardwick Seminary, near Cooperstown, New York, and the remaining two-thirds to the trustees of Oberlin College."

It is over whatever claim these two institutions have under this section of item 33 that this controversy arises. Then follows this provision in item 34:

"It is my will that all of the bequests herein provided, to be paid to individuals, at my death, be paid in full before any bequests to the Bible Society, Home and Foreign Missions, Oberlin College, Orphan Asylum, Woman's Retreat, and Industrial School; and if my estate shall be insufficient to pay the last mentioned bequests in full, then they shall be paid ratably, to the sums mentioned, so far as my estate will allow."

Then he provides that the bequests to his wife, Eliza Ann Clark, to his daughter, Marion C. Tyler, and to several others whom he mentions and names, are to be paid in full before any others. Then he directs that, "so far as convenient the bequests be paid in the order in which they are herein stated, and with as little delay as practicable, and are to be paid in money or such securities as my executor may select."

Then follows this provision:

"My executrix is authorized to make sales of any stocks or other securities

herein set apart for my wife's income excepting government bonds, and to re-invest the proceeds of the same as she may deem necessary to secure safety and productiveness of income."

Now, what did the testator mean? For the intent as gathered from the will, in the light of such circumstances as may be shown, is to control and govern in the construction of this will; and that intent is to be carried out, unless it is in violation of some positive provision of law.

It is insisted and claimed, as I have said, that item 32 gives but a life interest in this property; that the purpose for which this residue is given is expressed in the item itself, to-wit, "to be used for her support during her lifetime," and it is insisted that if this item had stopped there, there could be no question under this provision of the will; that when a bequest is given for a specified purpose or a specified object, it is not an absolute bequest, and if that object or purpose is limited to a use during life, that use and that limit of time defines the interest of the taker, and, therefore, it is but a life-estate.

On the other hand it is insisted that item 32 provides for an absolute gift of the residue of the estate "to be disposed of by her in any way she may think proper."

We further find in item 33 of the will, this language:

"And so much of any residue given to my wife for support and disposition as shall not have been expended." This language refers to what may be found in item 32—it is the disposition of the residue. The two provisions must be construed together, and construing them together may enable us the more clearly to understand what is meant by the language used in item 32.

Numerous cases have been cited to us bearing somewhat upon the construction which should obtain to like provisions in wills. I may say, without taking up the time to examine them, that nearly all of those cases are cases where there was an express life estate or interest given to the devisee. The case to be found in 52 N. H., is a case where a life interest was expressly given. The case of Stewart v. Walker, 72 Me., 145, is a case where an express life interest was given. The case of Brant v. Virginia Coal & Iron Co. et. al., 93 U. S., 326, is a case where an express life estate was given.

"Where a testator made a bequest to his wife of all his estate, real and personal, 'to have and to hold during her life, and to do with as she sees proper before her death,' the wife took a life estate in the property with only such power as a life tenant can have, and her conveyance of the real property passed no greater interest."

The case of Giles v. Little, 104 U. S., 291, is a case of similar character. The case of Bradley v. Westcott, 3 Vesey Rep., 445, is a case where there was expressly a life interest given.

"Bequest of all money, stocks, etc., and all other personal estate to the sole use of the testator's wife for life, to be at her full, free and absolute disposal during her life, without being liable to any account, and after her decease certain articles specified and £500, according to her appointment by will; in default of appointment to fall into the residue, which was disposed of."

The court held that the wife took an interest for life only, with a limited power of disposition. And then the court say in that case, on page 453:

"The distinction is, perhaps, slight which exists between a gift for life with a power of disposition superadded, and a gift to a person indefinitely with a super-added power to dispose by deed or will. But that distinction is perfectly established that in the latter case the property vests. A gift to A, and to such person as he shall appoint is absolute property in A, without an appointment; but if it is to him for life, and after his death to such person as he shall appoint by will, he must make an appointment in order to entitle that person to anything."

The case cited in 135 Mass., is a case where an absolute estate was given in the first clause of the will. The provision was:

"After payment of all my just debts, I give and bequeath to my son, Benjamin R. Meins, Jr., all my estate and property of which I shall die seized or possessed, whether real, personal, or mixed; to have and to hold the same to him, the said Benjamin R. Meins, Jr., his heirs, executors, administrators and assigns forever."

There was here a devise over, and it depended upon two contingencies; one of the contingencies was that he should die without heirs or children, and the other contingency was that he should die without having disposed of the property. Now the court in this case in 135 Mass., as well as may be found in numerous other authorities, hold that while an executory devise over upon some certain contingency, as that he should not die before he was twenty-five years old, or if he should die before he was twenty-five or before he was twenty-one, or if he should die without issue, would be good and would be sustained; a devise over upon that contingency and upon the further contingency that the property should not be disposed of would not be good, and that although the devise over was to his sisters in case he should die without issue and without disposing of the property, the property would pass to his heirs and not, under the devise, to his sisters.

There are really but four cases that I am able to find that come up to, and have a bearing upon the case which we have here in controversy. They are the cases to be found in the 19 O. S., 490, in 6 Pet., in 47 N. Y., and in the 14 O. S.

I say here, that the rule seems to be well settled that where an express life estate is given with a devise over, although there may be provisions in the will authorizing disposition, the devise over is good. But almost every one of the cases, it will be observed, uses the language, where there has been an express devise or bequest for life. It is not so, however, as I have said, in the case to which I shall refer in the 6 of Peters, nor is it so in the case in the 19 O. S., but in every case which I can find, outside of those four of which I shall hereafter speak, the courts use the language, where there has been an express devise for life with a power of disposition, and then a devise over, that the devise over will be sustained, and in most of the cases it is held that the power of disposition in the devisee shall be restrained to such use and to such disposition as a life tenant may make, and no more.

We now come to the case of Baxter v. Bowyer et al., 19 O. S., 490.

"Conflicting provisions in a will should be reconciled so as to conform to the manifest general intent, and it is only in cases where such provisions are wholly and absolutely repugnant that either of them should be rejected. Where by one clause in a will property is devised or bequeathed by words *prima facie* importing an absolute estate, and by a subsequent clause is given in remainder to another person, the first devisee or legatee takes only a life estate and the limitation over is valid."

The provisions in item one of this will were: "I give and devise all my property to my beloved wife, Deborah Baxter, both real and personal, of every description, with full power to collect, by law, or otherwise, all debts due me, to adjust and pay all expenses resulting from my last sickness and demise, and all other just claims whatsoever. I also expressly desire that she shall have unlimited power in the possession of all property, real and personal, which is bequeathed to her; to sell at public or private sale, on such terms as she may think best, or use in any manner, as she may deem proper, any or all of the property, real or personal; and deeds to purchasers to execute, acknowledge and deliver in fee-simple."

Item 2: "I do hereby devise that at the death of my beloved wife the sum of two hundred dollars to be placed in the hands of the treasurer of Union Cemetery as a perpetual fund, to be by him placed at interest, the interest to be annually collected and expended in taking care of our graves."

Item 3: "I do hereby devise and bequeath at the death of my beloved wife, after all expenses resulting from her last sickness and demise, and expenses of tombstones and item second shall have been adjusted, all the property then re-

maining to the Presbytery of Cincinnati; said property to be placed by said Presbytery in a fund," etc.

The question in this case was, first, whether the wife took an absolute title, or whether she took, simply, a life interest, and it was held by construction, and under this rule, that she took but a life interest in the property, and that the devise over was good. And in doing so the court follow the case of Smith v. Bell, 6 Pet. They say:

"If he had added the words 'for life' after the word 'property,' all parts of the will would harmonize and nothing need be rejected. But any equivalent words will surely answer the same purpose; and words fully equivalent are found in the provisions of items two and three. Read together, the two apparently conflicting provisions would stand thus: 'I give all my property to my wife with the remainder in fee at her death to the Presbytery of Cincinnati.' Such is, substantially, the language of the will construed in Smith v. Bell, 6 Pet., 68. Indeed, the language there was more repugnant than here. The language there was, 'I give to my wife, Elizabeth Goodwin, all my personal estate to and for her own use and benefit and disposal absolutely; the remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin.'"

It will be noticed here in these provisions that there was an absolute devise over in both this case in the 19 O. S., 490, from which I am reading, and in the case of Smith v. Bell, 6 Pet., of the entire remainder.

"And yet the court held, Chief Justice Marshall delivering the opinion, that the wife took only a life estate and that the limitation over was effectual. Substantially to the same effect are many other cases, both English and American."

Well, now, I may say that, although the court say so, I have examined for these cases, and I have been unable to find that class of cases, either English or American, outside of the 47 N. Y. Rep. The court in 19 O. S., 490, further say:

"Most of the authorities cited by counsel, where an apparently contrary doctrine has been held, are distinguishable from the present case by a single peculiarity. In most of them the subject matter of the limitation over was not the remainder of the estate," as the court find it was in this case in the 19 O. S., and as they say the court found in 6 Pet., "but such part of the estate as the first devisee or legatee chose to leave. Thus, in the leading case of Attorney General v. Hall, Fitzgibbon, 314, the subject matter of the limitation was, 'so much as he should be possessed of at his death.' In Ide v. Ide, 5 Mass., 500, it was, 'the estate he shall leave.' In Jackson v. Bull, 10 John., it was, 'the property he died possessed of.' In Jackson v. Robbins, 16 John., 537, it was, 'such estate as should remain unsold, undevised or unbequeathed.'

"These and the like cases are clearly distinguishable from the present one. They are cases where the testator gives to the first devisee full dominion and control over the estate, and then, under the form of a limitation over, undertakes to make, as it were, a will for the first devisee to take effect in case the first devisee should fail to make one for himself or otherwise to dispose of the property. This the testator cannot do. Every one has the right to dispose of his own property. To make one the absolute owner of my property and at the same time retain any power in my own hands to control or dispose of it is simply impossible."

These cases all speak of the disposition of the remainder, and what remainder is to go over and pass to the subsequent devisees under the will, and a distinction, the court say, is to be observed between the case they are deciding and most of the cases cited upon the other side in this particular, and that distinction the court in the 19 O. S. 490, recognize as being well settled in law.

There are numerous authorities bearing upon this question, and from them all it seems to be an important matter to examine closely the provisions of the will which devise the remainder. If the devise over is of the entire remainder, then one construction may obtain. But if it is not of the entire remainder, but of such portion or such part as the first devisee shall not dispose of, then the distinction

arises, for it leaves it in the control of the first devisee to determine what, if anything, shall be taken by the devise over.

"A bequest of what shall remain or be left at the decease of the prior legatee, or of what he does not want or does not spend, or of what he can transfer or of what he can save out of his yearly income, or what remains undisposed of or is not disposed of by deed or will, or of the bulk of certain property or a gift over to the latter legatee, in case of the death of the prior legatee intestate, is void for uncertainty; and this uncertainty arises simply out of the fact that the first devisee has the power of disposition and may determine himself what estate, what interest or what quantum of interest the subsequent devisee shall take under the will." 1 Jarman on Wills, 4th London Ed., 1880, page 653.

Judge Welch, in his opinion, in the case of Baxter v. Boyer et al., 19 O. S., 499, 500, after citing several of the cases to which I have referred, and admitting their authority, proceeds to give the reasons of the rule thus settled, and to distinguish them from the case he is deciding.

The following additional authorities upon this subject in our opinion settle the law upon this question beyond controversy:

"All said third part of such residue which shall remain at the time of her decease." This clearly implies a power of disposition during her life, and such has been the effect given to a similar provision in many adjudged cases." Gifford v. Choate, 100 Mass., 346.

A testator devised all his real estate to his wife, to be at her own disposal, but if any part thereof remained unsold at the time of her death, he devised the same to his children and grandchildren. The will took effect before the Revised Statutes, and the widow died without having sold the property. Held, by the Vice-Chancellor, that the wife took an absolute estate in fee, and that the subsequent limitation over was repugnant and void." McDonald v. Walgrove, 1 Sanf. Ch. 274.

"F. died in 1791, leaving a will by which he devised certain real estate to his wife for life, remainder over to his son D., his heirs and assigns forever. He devised another parcel to his son H. A subsequent clause of the will provided that if either of the testator's two sons shall die seized of the estate hereinbefore bequeathed, or any part thereof, without lawful issue, that then the estate of him so dying seized hereby bequeathed shall descend to the other."

"Held: That the words, 'shall die seized of,' imported an absolute power of disposition in D.; that, therefore, the limitation over was void, and D. took an absolute title." Van Horne, Ex'r, etc. v. Campbell et al., 100 N. Y., 287, 293.

This case reviews not only the cases which I have cited from the 19 O. S., 490, but every other case in the state of New York which can be found upon the proposition. The case was decided in 1885, and it is the most recent case which I have been able to find discussing the question involved in this case. It is not exactly like this case, and perhaps may not be controlling in the disposition which should be made of it, but it does show the stress which courts in the construction of wills lay upon the provisions which dispose of the remainder; whether it shall be the entire residue or remainder that is disposed of, whether it shall be such portion as the first devisee shall leave undisposed of that shall go over into the remainder.

Where a life-estate is once established, or, as I have said, when there is an express life-estate given, the authorities are uniform in holding that the power of disposition given to the first taker is limited to such disposition as a life tenant may make.

I may say this further, that in numerous cases it will be found that the case of Smith v. Bell, 6 Pet., is criticised. The distinction between that case and the cases which I have last cited is not observed either by the court of appeals of the state of New York, or by the supreme court of Massachusetts in their criticisms of that case, and they do not seem inclined to follow it. But the supreme court

of our state recognize the distinction between those cases and the case in the 6th Peters, and in the case which they are deciding they follow the case in 6 Pet., and seem to regard it as well established law.

Now in view of those authorities it becomes important to determine what is disposed of in this will. We are to look at the disposition of the remainder as much to determine the intent of the testator as we are to look at the first item of the will which gives the estate to the devisee. In this 32d item he gives, first, the residue of his estate to his wife, Eliza Ann Clark, "to be expended for her support during her life-time, and to be disposed of by her in any way she may think proper."

Now, in the residuary clause in item 33 he says, "and so much of any residue given my wife for support and disposition, as shall not have been expended." In this residuary clause in item 33 the power of disposition by the first devisee, Mrs. Clark, is fully recognized, and he only undertakes to dispose of so much, in fact, as she does not dispose of, or, in other words, as remains unexpended by her.

Now, did he intend to give her anything more than the mere use of the residue of his estate? He has provided an absolute gift in the first instance. He then provides what she may use it for. He was not content to stop there, for fear, evidently, that he must more fully express his intent, for some reason, and so when he says I give her this property to be expended for her support, he goes further and says, "and to be disposed of by her in any way she may think proper." This language is to be construed with reference to the disposition he has before made, and the power, if any, which he has given to her, or the purpose for which he does give it to her. Then recognizing this power of disposition which he has given to her he does not go forward and provide in the residuary clause that the entire remainder shall go over to these subsequent devisees, but such part only as shall remain undisposed of or unexpended, to use the language of this item of the will. He recognized in this item the power of disposition which controlled in the New York case, because in that case the residuary clause simply provided that if the first taker should die without issue and seized of the property, then there should be a devise over, and the court held that the words "seized of the property," by implication, gave and recognized in the first devisee the full power of disposition of the property, and therefore, they say, that the power of disposition defeated what would otherwise have been a good executory devise.

Some stress is laid upon a further proposition in this will, to-wit, "to be distributed at the death of my wife as to the estate so devised for her life," and it is insisted that this language refers to all of the items mentioned in this will, and therefore it is to have some controlling effect in construing the language "and so much of any residue given to my wife for support and disposition as shall not have been expended."

Now that language used in that connection is definite; it refers to something which has been given in item 32 of the will, and to so much of it, in effect, as shall remain undisposed of by her. It refers, as well, to another provision in the will wherein there is given to the wife the use of the homestead so long as she shall live, and the use of the store upon Superior street during her life. It refers directly to the provision in item 32, and by inference, perhaps, to this other provision that I have just mentioned. But the effect of it cannot be to control entirely the construction which should be given to item 32, or that part of item 33 which evidently refers directly to what is disposed of in item 32; for when using this language, "and so much of any residue given to my wife for support and disposition as shall not have been expended," the testator had in his mind what he had done in item 32 of the will. He was speaking in reference to that. He had that in view, and so when he came to speak afterwards in a casual way as to when the property should be disposed of, he said, as to that portion of it, "to be distributed at the death of my wife as to the estate so devised for her life." From the best consideration we are able to give to this clause we are of opinion that item

R. P. Ranney, and Adams & Russell, for plaintiff.
Boynton & Hale, and Ingersoll, for Oberlin College.
James A. Lynes, for Hardwick Seminary.