WILLIAM R. CHADWICK, Appellant, *v.* WARREN WILSON, Respondent.

*Will — creation of a life estate.*

A will contained the following clause: "As I know nothing of the whereabouts of my son Melville D. Wilson, and whether he is dead or alive I know not, and as I have given him much more than any of the others' of my children, I give and bequeath to him the twelve acres known as the 'Carr lot,' or its equivalent, provided I sell my farm, in trust for his heirs."

*Held*, that under this clause, construed in connection with the entire will and the surrounding circumstances, the son named therein acquired a life estate in the "Carr Lot," and that a conveyance thereof by him operated to vest in his grantee the right of possession thereof.

APPEAL by the plaintiff, William R. Chadwick, from a judgment of the Supreme Court in favor of the defendant dismissing the complaint upon the merits, entered in the office of the clerk of Jefferson county on the 10th day of May, 1893, upon a decision of the court rendered after a trial by the court without a jury, by consent of parties, at the Jefferson Special Term.

This action was brought to recover twelve acres of land particularly described in the complaint and known as the "Carr lot." A trial was had at the Jefferson Special Term, and a decision made dismissing the complaint based upon the following findings of law: "*First.* That it was the intention of the testator, Lyman Wilson, by the seventh item or clause of said will, to create a trust for whoever should be Melville's heirs at the time of his death, and not to vest title in him of the land in said clause mentioned. *Second.* That the trust attempted to be created by the said seventh item or clause of said will was void under the statutes of this State, and no title whatever to said twelve acres of land vested in said Melville Wilson. *Third.* That by the deed of Aaron E. Chadwick, as attorney, to William R. Chadwick, the plaintiff, the plaintiff acquired no title to the twelve acres of land in question which entitles him to maintain this action."

Lyman Wilson died in the town of Philadelphia, Jefferson county, January 24, 1877, leaving him surviving his wife, Ruth Wilson, two daughters, Chloe and Emma, and four sons, Warren, Lyman, Henry and Melville. He left a last will, which was dated October 24, 1876, which was drawn by himself, and admitted to probate May 21, 1877, in and by which he attempts to dispose of all his property, both real and personal, giving to his wife the use thereof "during her natural life," except a small provision out of the personal property given to his two daughters "to make their shares equal to what had been advanced to the boys, excepting Melville." The seventh clause of said will is as follows: "*Seventh.* As I know nothing of the whereabouts of my son Melville D. Wilson, and whether he is dead or alive I know not, and as I have given him much more than any of the others of my children, I give and bequeath to him the twelve acres known as the 'Carr lot,' or its equivalent, provided I sell my farm, in trust for his heirs." Near the close of the will is the following provision: "My children are not to have any control of the above bequests until after the

decease of my wife, Ruth Wilson." It is found as a fact that Melville married and left home several years prior to the death of the testator " and had not been heard from by his father up to the time of the making of his will or the time of his death, and at the time of the making of said will the said Lyman Wilson did not know whether his son Melville was living or dead, or whether he had any children. He did know at the time Melville left home that he then had no children." It is found that : " It does not appear from the evidence whether Melville ever had any children, but it does appear that he is not living with his wife." In September, 1889, he executed a power of attorney authorizing a conveyance of the Carr lot to the plaintiff, which conveyance was made and recorded. Plaintiff demanded possession of the twelve acres before the commencement of this action, which was refused by the defendant. Ruth Wilson, the widow, died prior to the commencement of this action.

*Brown & Adams,* for the appellant.

*Henry Purcell,* for the respondent.

HARDIN, P. J. :

Upon the construction to be given to the seventh clause of the will hinges the decision of this case. Searching for the intention of the testator in regard to Melville reference may be had to all the provisions of the will. In the latter provision of the will is found the clause that " my children are not to have any control of the above bequests until after the decease of my wife, Ruth Wilson." This language is suggestive of the fact that the testator supposed by the language he had used, his children, including Melville, were to have control of the property specifically devised to them. The language is used after the provision for the wife which clearly limited the use of his property to her life, and, therefore, it may be supposed that the later words, implying that the children were to have control of her property given to them after her death, significantly indicate the intention, as well as the supposition of the testator that the words as to the devises to the children carried out an intention that each should share in the property left by him. We are also to bear in mind, in searching for

the intention of the testator, that a construction is to be preferred which does not disinherit a child to one that does, and also that a construction that disposes of the whole of the estate of the testator is to be preferred to one which leaves the testator dying intestate as to some of his property. (*Thomas* v. *Snyder*, 43 Hun, 15; *Vernon* v. *Vernon*, 53 N. Y. 361.) It seems reasonable to suppose that the testator, a layman, in drawing his will intended that his son Melville should take, hold and have control of the Carr lot, after the death of the widow and was to enjoy it during his lifetime. Until his death it could not be known who his heirs were; and under the statute as to express trusts no authority is given to receive and hold property for indefinite unascertained beneficiaries; nor is such a trust one authorized by statute. The words of the devise are clear and definite in expressing an intent to give the Carr lot to Melville as they appear in the early part of the clause under construction; and an intent to overturn or cut down such an intent on the part of the testator ought not to be allowed in the absence of words clearly and decisively giving the whole estate to another. (*Roseboom* v. *Roseboom*, 81 N. Y. 359; *Campbell* v. *Beaumont*, 91 id. 464.) In the early part of the clause the declaration is made by the testator that he knows nothing of the whereabouts of his son Melville, and that whether he is dead or alive he knows not, and then there is the statement that he has " given him much more than any of the others of my children." These words are suggestive of and an explanation why less is given to Melville than to some of the other children; and they also give rise to an implication in the connection with which they were used, that it was the intent of the testator to make a moderate provision for his son Melville, and in carrying out that intent he uses the words, " I give and bequeath to him the twelve acres known as the ' Carr lot' or its equivalent, provided I sell my farm, in trust for his heirs." It must be borne in mind that the testator was uninformed as to whether Melville had children, and that the language used was to cover the contingency, providing that in case he had children they should be permitted to share in the testator's estate. He had used words in the primary bequest sufficient to carry an absolute estate to Melville, although not accompanied with any words of succession. (*Tyson* v. *Blake*, 22 N. Y. 562; 1 R. S. 748, § 1.)

The subsequent provision found in the words " in trust for his heirs," under the circumstances, may well be interpreted as refering to Melville's lineal descendants only (*Bundy* v. *Bundy*, 38 N. Y. 421); and it does not seem unreasonable to infer from the language used and from the circumstances disclosed, which are to be considered in giving interpretation to the language found in the will, that the intention of the testator was to devise to Melville a life estate in the Carr lot with a " subsequent limitation to take effect immediately upon the determination of such first estate," which would confer upon his children the remainder. To give effect to the primary language used and to construe it as carrying a fee to Melville would render inoperative the subsequent words apparently used by the testator for the purpose of providing for the children of Melville, in the event that he had any ; and it is, therefore, deemed a reasonable construction of the whole language used to limit the primary language so that the will operated to effectuate the intent of the testator by carrying to Melville a life estate with the remainder over to his children. ( *Wager* v. *Wager*, 96 N. Y. 164 ; *Graham* v. *New York Life Insurance & Trust Company*, 46 Hun, 266 ; *Van Horn* v. *Campbell*, 100 N. Y. 299.) To dispose of the question before us it is only necessary to hold and decide that Melville, by virtue of the terms of the will, acquired a life estate in the Carr lot, and that his conveyance to the plaintiff operated to vest in the plaintiff the right of possession of the premises. Our conclusion is that the trial court fell into an error in holding " that plaintiff acquired no title to the twelve acres of land in question which entitles him to maintain this action." We think a new trial should be ordered.

MARTIN and MERWIN, JJ., concurred.

Judgment reversed and a new trial ordered, with costs to abide the event.